439 A.2d 627

**Rosemarie KRAWCHUK, Widow of John Krawchuk, Appellant,**

**v.**

**PHILADELPHIA ELECTRIC COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1981.

Decided Dec. 17, 1981.

Reargument Denied Jan. 29, 1982.

Albert Ring, Philadelphia, for appellant.

Thomas F. McDevitt, Philadelphia, for Philadelphia Electric Co.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

John Krawchuk died of a heart attack (myocardial infarction) at his home shortly after midnight on May 10, 1973. He had been employed for twenty-seven years as an electrical engineer with the Philadelphia Electric Company, the appellee.

Rosemarie Krawchuk, his widow and the appellant herein, filed a petition for workmen's compensation death benefits alleging the decedent's heart attack was "due to excessive strain and pressure and work in the course of his employment." Following several days of hearings, the referee, Irvin Stander, awarded compensation to the claimant. The referee made the following findings of fact:

7. At the time of his death, Claimant's decedent was working under great and unusual stress stemming from the work he was doing in connection with a special project known as "PMS4", *and* a treatise he was to deliver, on behalf of his employer, in California a few days later.

. . . .

9. In addition to the special project, and other duties, Claimant's decedent had been working for several weeks on the preparation of a treatise to be delivered in California.

10. *All of the above activities* constituted additional and unusual exertion on the part of Claimant's decedent, *arising from and related to his employment.*

11. On the day prior to the heart attack, Claimant's decedent was examined by Dr. Albert J. Kraft, who at that time found the Claimant's decedent to appear tired and under great stress *due to his added work load.*

12. For five hours prior to the heart attack, Claimant's decedent had been working at his home on the treatise which he was to deliver on behalf of his employer at a convention to be held in California a few days thereafter.

13. Dr. Kraft, a cardiology specialist, testified as to a *casual relationship between the stress occasioned by Claimant's decedent's heavy work load and the fatal coronary* which he sustained on May 10, 1973; and *stated unequivocally that there was a causal relationship between the stressful events concerned with the decedent's work and his death from myocardial infarction.* (Notes of Testimony, 10/21/74, pages 16 and 17). (emphasis added).

Based upon the above findings, referee Stander rendered these conclusions of law:

2. On May 10, 1973, Claimant's decedent suffered a compensable injury within the meaning of the Act when he sustained a fatal coronary attack at his home *after an extended period of additional and unusual strain and exertion, including* five hours at home immediately prior to his coronary attack, in carrying on for his employer his duties in a special project at work and in the preparation of the material for a treatise he was to deliver at a meeting to be held in California a few days after his coronary attack.

3. Claimant's decedent had suffered a prior heart attack in 1967, but had made a full recovery....

4. Claimant's decedent's prior condition was aggravated by the unusual strain and exertion of his special duties in Project "PMS4" and the additional burden of preparing for the delivery of a treatise on behalf of his employer at a California meeting; and *the unusual activities at work and at his home in the evenings precipitated his fatal coronary attack on May 10, 1973; and therefore constituted a compensable injury arising from and related to his occupation.* (Citations omitted).

5. The treating physician and cardiologist for Claimant's decedent established by unequivocal and substantial competent evidence that *there was a direct causal rela-*

*tionship between the unusual stress, strain and exertion of his employment and the fatal coronary attack suffered by Claimant's decedent on May 10, 1973.* (Citation omitted).

Appellee appealed the award to the Workmen's Compensation Appeal Board (the Board) which reversed the referee. The Commonwealth Court, in turn, affirmed the order of the Board in a 4–3 decision. *Krawchuk v. Workmen's Compensation Appeal Board,* 40 Pa.Cmwth. 591, 397 A.2d 1296 (1979) (majority opinion by Wilkinson, J. (now Justice); dissenting opinions by Rogers, J. and Blatt, J., each joined by DiSalle, J.).

Both the Board and Commonwealth Court emphasized that the injury—the heart attack—had occurred off the employer's premises at the victim's home. The opinions reflect the perception of the Pennsylvania Workmen's Compensation Act (the Act) that, in off-premises cases, the claimant must prove, in addition to proving that the injury arose in the course of employment and was related thereto, that the victim was actually engaged in the furtherance of his employer's business or affairs at the time of the occurrence of the injury. According to the Board and Commonwealth Court, this additional requirement could be met only by a showing that the work being done at home was at the express or implied request of the employer. As the referee had made no finding regarding the "critical fact" of whether the victim had been working at the request of appellee-employer, the Board and Commonwealth Court rejected the referee's conclusions of law and vacated the compensation award.

Appellant petitioned this Court for allowance of appeal from the order of the Commonwealth Court affirming the Workmen's Compensation Appeal Board. We granted allocatur.

Appellant argues that the imposition upon her of the burden of proving that her husband had been working at home at the express or implied request of his employer is neither countenanced nor permitted by the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1603 (1953). We agree.

In 1972, the General Assembly enacted substantial changes in the Act which shifted the focus from injuries *by accidents* in the course of employment to injuries *arising from and related to* the course of employment. *See Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978). With these amendments, the legislature clearly manifested its intention to expand workmen's compensation coverage to include stress heart attack victims. *Id.*

Presently, we are asked to decide whether the General Assembly intended that coverage to extend to job-related heart attacks which occur off the employer's premises and, if so, what standards to apply to that situation. Because we find no statutory or logical basis for the "requirement" that the off premises heart attack victim must have been actually engaged, at the moment of the heart attack, in the furtherance of his employer's business at the employer's express or implied request, we reverse the order of the Commonwealth Court.

■■■ In construing the Act, we are mindful that, being remedial in nature and intended to benefit the Pennsylvania worker, the Act must be liberally construed to effectuate its humanitarian objectives. *Bley v. Commonwealth Department of Labor and Industry*, 484 Pa. 365, 399 A.2d 119 (1979); Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928 (pamphlet 1981–82). Actually, it does not require a particularly "liberal" construction of the Act to realize that the added "requirement" perceived by the Board and Commonwealth Court is improper under the Act. A straight forward reading of the Act demonstrates there are only *two* requirements for compensability—(1) that the injury arose in the course of employment and (2) that the injury was related to that employment.

■■■ The operative language in section 301(a), 77 P.S. § 431 is "[e]very employer shall be liable for compensation for personal injury to, or for the death of each employee, by an *injury in the course of employment.*" In section 301(c),

77 P.S. § 411(1), the operative language is " 'injury' and 'personal injury' . . . shall be construed to mean an injury to an employe, regardless of his previous physical condition, *arising in the course of his employment and related thereto* . . . ." [1]  This Court and the Commonwealth Court have consistently construed section 301(c) to require the establishment by the claimant of only two facts—that the injury arose in the course of employment and was related thereto. *See, e.g., Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board*, 489 Pa. 485, 486, 414 A.2d 625, 626 (1980); *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co., supra* (under the amended Workmen's Compensation Act, a heart attack is a compensable injury as long as the claimant proves that it occurred in the course of employment and was related thereto.); *Faust v. Workmen's Compensation Appeal Board*, 55 Pa.Cmwth. 285, 422 A.2d 1246 (1980) ("heart attacks are compensable injuries . . . if they (1) arise in the course of employment and (2) are related thereto.").

Nowhere does the Act create a dichotomy between injuries which manifest themselves *on* the employer's premises and those which manifest themselves *outside of* the normal work area. The only mention of the employer's premises in

1. This section reads, in part:
> The terms "injury" and "personal injury" as used in this act, shall be construed to mean *an injury to an employe*, regardless of his previous physical condition, *arising in the course of his employment and related thereto*, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury: and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from *such injury and its resultant effects*, and occurring within three hundred weeks after the injury. The term *"injury arising in the course of his employment,"* as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; *but shall include* all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . . (emphasis added).

the relevant sections is the reference in the latter part of section 301(c) which provides " 'injury arising in the course of employment' shall *not include* [the "injury inflicted by a third person" exception]; but . . . shall *include* all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . . "

This *inclusion* of injuries sustained while actually engaged in the furtherance of the employer's business whether on or off premises cannot be read to create a classification *excluding* all off premises injuries occurring while not so engaged. As Judge Blatt noted below, "shall include" certain named items does not imply an exclusion of unnamed items; rather, it calls attention to the single item or smaller class of items by stressing the fact of its existence or the fact of its not having been overlooked. 397 A.2d at 1304. Judge Blatt offered the following illustration from a case described by Professor Larson [1A, Larson, Workmen's Compensation Law § 29.22 at 5–375–76 (1978)]

> "Claimant, a riveter, had frequent occasion to drill holes in metal, and in the course of the day, sharp, needle-pointed shavings became lodged in his hair, clothing, and eyebrows. The employer provided no place to change clothes and no facilities for removing these particles by brushes or vacuum appliances. Claimant left for home with some of these shavings still clinging to him, and when he was almost home, about 15 minutes after the close of working hours, a sharp steel sliver fell from his eyebrows into his eye causing severe injury.
>
> What can be done about a case like this? A clearer instance of an injury caused by the employment cannot be imagined. If it is noncompensable—and it was held here noncompensable—then something is basically wrong in the coverage formula." (Citation omitted)

Yet the [Commonwealth Court] majority's formulation would deny benefits here because the injury was not

"sustained while the employe was actually engaged in the furtherance" of the employer's business. (Blatt, J., dissenting, 397 A.2d at 1304.)

*See also Quinn, supra* at 42, ("language in the amendments indicates legislative intent to include those injuries which may have only a tangential relationship to the premises of the employer.") It is apparent that the clear legislative mandate, and the rule of liberal construction of the Act, do not permit interpretation of the *inclusion* language to tack an additional requirement onto the elements required for compensation as the Board and the Commonwealth Court have done.

Moreover, the added "requirement" imposed by the Board and Commonwealth Court fail to appreciate the *nature* of a myocardial infarction. Not infrequently, a stress heart attack is a gradual injury wherein the pressures and strain of the job—physical, mental, or both—take their toll in small doses until, at some point, those doses in the aggregate push the heart past its limits. That such point happens to manifest itself at the victim's home is irrelevant *except* insofar as the location of the final onslaught *might* have some bearing in a given case on whether the injury arose in the course of employment and was related thereto.

As Judge Rogers noted in dissent, 397 A.2d at 1303:

Heart attacks, unlike accidents, do not just happen, they are brought about by something or a number of things which the heart is unable to tolerate. Their timing, as we have said, is altogether uncertain. It seems to me that if a workmen's compensation claimant proves by competent medical opinion, credited by the fact-finder, that his heart attack was brought about by a thing or things arising from the course of his employment and related thereto, he has made out a case under Section 301(c) of the Pennsylvania Act regardless of where he was when the heart attack occurred. John Krawchuk's widow proved more than this; she proved that her husband was actually

engaged in the furtherance of the business and affairs of his employer when he was stricken at home.

The location should be, therefore, merely a *factor* for the referee to consider.[2] Instead, the Board and the Commonwealth Court have elevated the location of the actual occurrence of the heart attack to a legal prerequisite requiring the claimant to shoulder an additional burden of proof. Such an interpretation does violence to the legislative intent. As Professor Larson stated, *supra* at § 29.22, the Act

> does not say that the injury must "occur" or "be manifested" or "be consummated" in the course of employment. It merely says that it must "arise . . . in the course of employment." "Arising" connotes origin, not completion or manifestation. If for example, a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result some time after working hours, the injury is routinely held compensable.[3]

For the foregoing reasons, we hold that the Commonwealth Court and the Board erred in requiring claimant to prove that an off-premises heart attack victim was actually engaged, at the time of the heart attack, in the furtherance

**2.** Thus, for example, if the victim has a heart attack during the latter part of a several month leave of absence, location *might* be a very relevant indicator of whether the injury arose in the course of employment; conversely, where the victim has a heart attack in the subway on the way home after a particularly stressful day at work, the location would seem to be a *minimal* factor. In either case, the referee must determine whether the attack was causally connected to the work, i.e., whether the injury arose in the course of employment and was related thereto.

**3.** In support of this proposition, Professor Larson cites, at 5–378–79, n.42, cases from: *Georgia: Maddox v. Buice Transfer & Storage Co.,* 81 Ga.App. 503, 59 S.E.2d 329 (1950); *Louisiana: Cutno v. Neeb Kearney & Co.,* 237 La. 828, 112 So.2d 628 (1959); *Minnesota: Wever v. Farmhand, Inc.,* 309 Minn. 42, 243 N.W.2d 37 (1976); *Mississippi: Mississippi Research & Dev. Center v. Dependents of Shults,* 287 So.2d 273 (1974); *New York: Miller v. A. P. Dimon & Sons, Inc.,* 45 A.D.2d 788, 357 N.Y.S.2d 145 (App.Div.1974), and *Tennessee: Lawrence County Highway Dept. v. Hardiman,* 531 S.W.2d 792 (Tenn.1975). *Cf., Nebraska: Reis v. Douglas Hosp.,* 193 Neb. 542, 277 N.W.2d 879 (1975).

of his employer's business at the express or implied request of the employer.

■ We now review the record to determine whether the referee's conclusions of law are adequately supported. "The referee is the finder of fact and the scope of appellate review is confined to an examination of the record to determine whether those findings of fact are supported by substantial evidence, and whether any constitutional rights were violated or error of law committed. *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 291, 388 A.2d 659, 661 (1978) (emphasis supplied)." *Westinghouse Electric Corporation v. Workmen's Compensation Appeal Board, supra,* 489 Pa. at 487–488, 414 A.2d at 626 (1980).

The referee found, after several days of hearing including testimony by the claimant and the victim's co-workers and supervisors, that the victim's normal work, the special project known as "PMS4" and the treatise he was to deliver in California, *all* constituted stress and exertion arising from and relating to his course of employment. Dr. Kraft, the treating cardiologist, gave his unequivocal medical opinion that the victim's heart attack was causally connected to the stress of his employment. These findings were amply supported by the record and amply support the referee's conclusion that "there was a direct causal relationship between the unusual stress, strain and exertion of his employment and the fatal coronary attack . . . .".

Consequently, as the Board and the Commonwealth Court committed an error of law, and as the referee Stander's findings of fact and conclusions of law were supported by substantial evidence, we reverse the order of the Commonwealth Court and reinstate the referee's award.

WILKINSON, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurred in the result.