639 A.2d 453

**John VOLTERANO, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD and Traveler's Insurance Company and Allied Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1993.

Decided March 24, 1994.

Reargument Denied May 16, 1994.

---

Robert J. Murphy, for J. Volterano.

William Bendon, for Allied Corp.

Norman R. Haigh, Secretary, for W.C.A.B.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur in the case *sub judice* to address two issues. The first issue is whether the Commonwealth Court

erred in failing to address *Lash v. WCAB (General Battery Corp.)*, 491 Pa. 294, 420 A.2d 1325 (1980), and instead treated this claim as one relying on a theory of mental disability. We also sought to address, as a matter of first impression, the standard of proof to be applied in cases where a psychological/mental disability arises within the context of a physical/mental association. Because the referee's finding of physical injury is not supported by substantial evidence and the lack of evidence that abnormal working conditions caused the psychic injury, we now affirm the order of the Commonwealth Court.

Claimant John Volterano filed two Claim Petitions on February 27, 1985, alleging that he experienced an injury on August 20, 1984, to his left shoulder and that he contracted severe occupational lung disease while in the employ of Appellee, Allied Corporation (Allied). Claimant was employed by Allied for more than forty years—first as a millwright, and then, since 1980, as a toolroom attendant. While employed by Allied, the Claimant was frequently exposed to asbestos.

In seeking treatment for his shoulder injury, Claimant had an arthrogram performed on December 11, 1984, in anticipation of surgery. Dr. Cohen, who examined the arthrogram, made an incidental finding of the presence of considerable interstitial disease (asbestosis) throughout the lungs.

Claimant then sought medical attention for asbestosis. It was subsequently determined that the arthrogram had been misread and the diagnosis of asbestosis was erroneous. In an initial examination of Claimant on January 16, 1985, Dr. Cantagallo heard bilateral rhonchi in Claimant's lungs. However, upon referral for pulmonary and cardiac evaluations, no signs of cardiac disease or active asbestos were seen. Despite the fact that he was advised that the arthrogram report was in error, Claimant continued to believe that he suffered from asbestosis. Dr. Cantagallo concluded that Claimant's disability, i.e., shortness of breath, was the result of Claimant's belief that he had a severe pulmonary disease.

Dr. Sokas, Claimant's consulting physician, examined him on April 10, 1985, and indicated on her report that Claimant appeared plethoric and anxious. Her examination of Claimant's lungs revealed fine crackles at the right base. Radiographic films of Claimant's chest revealed significant bilateral pleural thickening and calcification with very minimal, if any, signs of interstitial fibrosis (asbestosis). A study of arterial blood gases and a ventilation scan yielded normal results. Dr. Sokas opined that Claimant had become fixed on the erroneous arthrogram and that his resulting anxiety precluded him from returning to his prior duties.

Dr. Swartz, whose deposition was introduced on behalf of Allied at the hearings before the referee, and who did not examine Claimant, opined that Claimant has asbestos-related pleural disease but does not have asbestosis. He noted that although Claimant has pleural thickening and pleural plaques caused by exposure to asbestos, the asbestos-related pleural disease would not impose any functional limitations on Claimant or require any specific treatment.

Following the hearings on Claimant's petitions, the referee specifically found persuasive and credible the testimony of Dr. Cantagallo, Dr. Sokas and Claimant. The referee also relied in his adjudication upon the portion of Dr. Swartz's testimony where that doctor conceded that Claimant has bilateral pleural plaque thickening with minimal interstitial disease (asbestosis) caused by exposure to asbestos. For these reasons, the referee determined that Claimant experienced a severe emotional reaction as a result of a physical injury to the pleura of his lungs, precluding his ability to perform his work duties beginning January 12, 1985, and awarded total temporary disability benefits. Simultaneously, the referee rejected Claimant's argument that he sustained a work-related shoulder injury. That conclusion was not challenged on appeal. Finally, the referee declined to assess counsel fees and penalties.

Cross appeals were taken. The Workmen's Compensation Appeal Board (Board) reversed the referee on the issue of disability, stating that an improper burden of proof had been

employed by the referee. The Board reasoned that because no physician testified that Claimant was physically disabled from any work-related injury or trauma, Claimant's case is one actually involving a mental cause and a mental disability—the classic mental/mental association. However, the Board determined that Claimant failed to show that his injury was caused by actual objective abnormal working conditions, as opposed to subjective, perceived, or imagined employment events. The Board concluded, therefore, that the referee erred in failing to apply the burden of proof necessary to prove a mental/mental condition and failing to find that Claimant never offered the objective evidence necessary to support this burden of proof.

The Commonwealth Court (*Doyle,* Friedman, JJ. and Lederer, SJ.), in an order and opinion, affirmed the order of the Board. The court found that Claimant's pleural thickening, which was found to have been work-related, was (1) unknown to Claimant at the time of his viewing the erroneous report and (2) not the basis for having the arthrogram. The court held on these facts that recovery is not possible. 149 Pa. Commw. 222, 613 A.2d 61 (1992). Claimant petitioned for review in this Court, and we granted allocatur. 534 Pa. 651, 627 A.2d 182 (1993).

Claimant argues that the Commonwealth Court erred in failing to find a work-related pulmonary physical injury in accordance with *Lash,* supra. Claimant states that the referee correctly awarded compensation to him based upon substantial and undisputed evidence that Claimant suffered from the aforementioned physical injury due to his continuous work-life exposure to asbestos for over 43 years while employed at Allied. Furthermore, Claimant argues that he cannot return to work to perform his prior duties where he would continue to be exposed to asbestos, and Allied has failed to present testimony of alternative work within Claimant's retained physical, emotional, and vocational capacities.

Allied argues, conversely, that the evidence as accepted by the referee does not support a physical disability under the

rationale of the *Lash* case.[1]  Allied contends that no disability can be shown by the fact that if Claimant continued to work, he would have placed himself at an increased risk of further injury because unrebutted evidence was presented that Claimant was not exposed to asbestos at his last job with Allied in the toolroom from 1980 to 1985.  Allied claims that before Allied must prove job availability, the Claimant must prove that he was disabled.

The standard of review applicable to such cases has been firmly established by this Court and is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or any findings of facts are not supported by substantial evidence.  *City of Harrisburg v. WCAB (Gebhart)*, 532 Pa. 592, 616 A.2d 1369 (1992), and *Bethenergy Mines v. WCAB (Skirpan and Consolidated Coal Co.)*, 531 Pa. 287, 612 A.2d 434 (1992).  Where, as here, the Board takes no additional evidence, the ultimate factfinder is the referee whose findings of fact, if supported by substantial evidence, must be accepted.  *Croll v. WCAB (Dorr–Oliver, Inc.)*, 511 Pa. 79, 84, 511 A.2d 1311, 1313 (1986).  In reviewing this matter, the Commonwealth Court erred by not considering whether the referee's finding of physical injury was supported by substantial evidence.  However, Claimant's reliance on *Lash* is misplaced.

In *Lash v. WCAB (General Battery Corporation)*, we addressed the issue of whether employees who had been required to handle lead daily during the course of their employment were entitled to an award of compensation for partial disability when they were involuntarily transferred to lower-paying lead-free jobs because, due to their lead exposure, they had become lead absorbers.  General Battery moved Lash and

1. Allied contends that Claimant failed to address the issue before the Commonwealth Court as to whether Claimant sustained a physical disability under the rationale of the *Lash* case.  Therefore, Claimant, according to Allied, has waived this issue.  Our review of the Claimant's brief to Commonwealth Court reveals that Claimant's argument was implicitly incorporated into the questions presented for review, and for that reason, Allied's claim of waiver is meritless.  See *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

342

Jablonski to lower-paying non-lead hazard positions in 1975 as a preventive matter on the recommendation of the company physician because they had become lead absorbers, i.e., they had begun to absorb lead into their bloodstreams at an abnormally high rate, making further lead exposure hazardous. Because these positions were less remunerative than their former lead hazard positions, Lash and Jablonski sought occupational disease benefits. The referee concluded as a matter of law that they had failed to prove by sufficient competent evidence that they sustained a work-related injury or occupational disease within the meaning of the Act. The referee's denial of compensation was affirmed by the Board and, in turn, by the Commonwealth Court.

In reversing the order of Commonwealth Court, we stated that the fact that appellants' health had not yet deteriorated to the advanced stages of lead poisoning did not mean that they were not suffering from a compensable injury. To require appellants to remain exposed until their condition had progressed to the advanced stages of lead poisoning in order to qualify for partial disability benefits would be unconscionable. We also indicated that in the interpretation of the Workmen's Compensation Act, the word "disability" is to be regarded as synonymous with loss of earning power. Accordingly, we found that the claimants were entitled to an award of partial disability benefits because, having become abnormally fast absorbers of lead after eight years of job-related exposure, they suffered a loss of earning power when forced to accept lower-salaried non-lead hazard positions.

Although Commonwealth Court failed to consider our decision in *Lash*, we find that *Lash* is factually distinguishable from the case *sub judice*.

■ The referee made no specific findings of fact relative to Claimant's physical injury. Instead, the referee made the following findings related thereto:

4. The referee specifically finds that in the course of his employment for the Defendant, the Claimant was exposed on a frequent basis to asbestos.

11. The testimony offered by the Claimant of working with asbestos and that his pulmonary and emotional pathology precludes return to prior duties as of January 12, 1985, is deemed persuasive and credible.

13. The finds and conclusions of Drs. Sokas and Cantagallo are deemed persuasive and credible.

14. The Defendant has not offered testimony of alternative work that the Claimant could perform with his retained physical, emotional, and vocational capacity.

(R.R. 7a–8a.) Based upon these findings of fact, the referee concluded the following as a matter of law:

2. The referee finds that the Claimant has met his burden of proving that he sustained a physical and emotional disability as a result of his work-related injury and occupational disease, precluding his ability to perform his prior occupation for the Defendant as of January 12, 1985. However, the nature of the Claimant's disability is limited *solely* to lung and emotional pathology.

(R.R. 13a.)

We must conclude, however, based upon a thorough review of the record, that the referee's findings of fact are not supported by substantial evidence. The referee's determination that Claimant sustained a physical and emotional disability as a result of his work-related injury and occupational disease is undercut by the findings and conclusions of Drs. Cantagallo and Sokas, which the referee deemed persuasive and credible. Although Dr. Cantagallo heard bilateral rhonchi in Claimant's lungs, pulmonary and cardiac evaluations disclosed no signs of cardiac disease or asbestosis. Dr. Cantagallo concluded that Claimant's disability, i.e., shortness of breath, was the result of Claimant's own interpretation of having a severe pulmonary disease.

Dr. Sokas' examination of Claimant's lungs revealed fine crackles at the right base. X-rays of Claimant's chest revealed significant bilateral pleural thickening and calcification with very minimal, if any, signs of interstitial fibrosis (asbestosis). A study of arterial blood gases and a ventilation scan

yielded normal results. Dr. Sokas opined that Claimant had become fixed on the erroneous arthrogram and that his resulting anxiety precluded him from returning to his prior duties.

Contrary to the referee's finding, pleural thickening is not an occupational disease. See 77 P.S. § 27.1. Rather, it is an indication that a person has been exposed to asbestos. Furthermore, we do not find that pleural thickening is a physical injury for purposes of establishing entitlement to workers compensation benefits because Drs. Sokas and Cantagallo did not state that pleural thickening, in any manner, impaired the functioning of the Claimant's lungs.

As to the referee's finding that Claimant was exposed on a frequent basis to asbestos while employed for Allied, the Claimant's own testimony revealed, however, that he only worked with material from boxes labelled asbestos prior to 1980, when he was a millwright. In 1980, the Claimant, according to the referee's finding, was transferred to the toolroom, where, for the next four years as a toolroom attendant, he repaired and distributed work tools. The testimony of both Claimant and William Belter, Allied's manager for maintenance construction, reveals that the toolroom was an asbestos-free environment. In fact, all asbestos had been removed from Allied's plant prior to 1980, according to Mr. Belter's testimony. Because Claimant was working as a toolroom attendant in an asbestos-free environment, we can find no reason why Allied would have had to offer evidence of alternative work that Claimant could perform with his retained physical, emotional, and vocational capacity.

Unlike *Lash*, the Claimant did not have an occupational disease. Furthermore, the Claimant could have remained in the same hazard-free environment of the toolroom instead of moving to an alternative work environment as the claimants were forced to do in *Lash*.

Finally, Claimant argues that the Commonwealth Court erred in imposing the burden of proof required in a "mental/mental case" when substantial evidence shows that Claim-

ant sustained a work-related pulmonary physical injury that produced a psychosomatic overlay, causing total disability.

Allied contends, however, that Claimant has failed to establish that his psychic injury was related to work under either the physical/mental or the mental/mental association. It is Allied's position that Claimant's knowledge of pleural thickening did not cause his psychic injury. Instead, the psychic injury was attributable to the misread arthrogram which had occurred three months prior to the discovery of the pleural thickening. Allied also argues that Claimant has offered no proof of abnormal working conditions.

██ Disabilities caused by psychological/mental elements may be considered to be injuries under the Act and therefore compensable if the other elements needed to establish a claim are met. The influence of the psychological or mental element can be broken down into three discrete areas: (1) psychological stimulus causing physical injury (the mental/physical association), *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981); (2) physical stimulus causing psychic injury (the physical/mental association); and (3) psychological stimulus causing psychic injury (the mental/mental association), *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

Although we granted allocatur to address the standard of proof to be applied in cases involving physical/mental association, we must leave this issue for another day because, as determined above, Claimant has not sustained a work-related physical injury. We also agree with Allied's position, which is supported by Drs. Cantagallo and Sokas, that Claimant's psychic injury is attributable to the misreading of the arthrogram. We decline, however, to find that a misdiagnosis is a physical stimulus such as could be the basis for an award of benefits.

██ The Commonwealth Court therefore did not err by imposing on the Claimant the burden of proof required in a mental/mental case. In a mental/mental case, work-related stress must be caused by actual objective abnormal working

conditions, as opposed to subjective, perceived, or imagined employment events. *Martin v. Ketchum,* supra. For objective employment events to be considered abnormal, they must be considered in relation to the specific employment. *Williams v. WCAB (Philadelphia National Bank),* 120 Pa. Commw. 551, 548 A.2d 1344 (1988). Objective evidence which is corroborative of an employee's perception is necessary in determining the existence of abnormal working conditions. An employee's testimony alone on this issue is not sufficient. *Andracki v. WCAB (Allied Eastern States Maintenance),* 96 Pa.Commw. 613, 508 A.2d 624 (1986).

A review of the record discloses that Claimant did not identify any abnormal working condition as triggering the psychological disturbance or show that his psychic injury was caused by actual objective abnormal working conditions, as opposed to subjective, perceived, or imagined employment events.

The order of the Commonwealth Court is therefore affirmed.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.