**Karen DANEKER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WHITE HAVEN CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Aug. 3, 2000.

John A. Bednarz, Jr., Wilkes–Barre, for petitioner.

Thomas P. Cummings, Scranton, for respondent.

Before: DOYLE, President Judge, KELLEY, Judge, and NARICK, Senior Judge.

DOYLE, President Judge.

Karen Daneker (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ) denying Claimant's claim petition for workers' compensation benefits.

Claimant began working for White Haven Center (Employer) in 1978 as a clothing room aide.[1] In 1983, the position of clothing room aide was abolished and Claimant was reassigned as a residential service aide. The change in position resulted in Claimant losing her job seniority and required her to work from 11:00 p.m. to 7:00 a.m. instead of from 7:00 a.m. to 3:00 p.m.

After approximately one year, Claimant sustained a work-related injury and was absent from work for several months. When she returned, she was assigned to a "non-ambulatory" ward that required her to provide hands-on care for twenty to thirty patients. Eventually, after a year and a half, Claimant returned to day shift and continued working as a residential aide.

In 1988, Claimant had three successive disciplinary charges lodged against her for three different reasons: breaching patient confidentiality, verbally abusing a patient, and leaving work early, but she was ultimately cleared of having committed these violations. On June 28, 1988, Claimant left work after she became ill with symptoms of indigestion and stomach pain. On September 14, 1989, Claimant officially resigned from her position with Employer.

On September 25, 1990, Claimant filed a claim petition against Employer, originally alleging that abnormal working conditions resulted in job stress causing her to develop major depression that disabled her as of June 28, 1988. Subsequently, Claimant amended her petition to allege physical symptoms in the nature of agitation, nausea, abdominal pain and vomiting related to stress from her employment. Employer filed a timely responsive answer, denying the material allegations contained in the petition, and hearings were scheduled before a WCJ.

During the hearings, Claimant testified to the above events. Specifically, Claimant testified that, as a result of the change in her job duties accompanying the elimination of her position of clothing room aide in 1983, Claimant began to experience extreme gas pains, vomiting and stomach pains. On cross-examination, Claimant indicated that she was under stress and anxiety and, on certain occasions, she was excused from work because she "[couldn't] take it." (Notes of Testimony, Hearing of October 15, 1992, p. 65.)

Additionally, Claimant presented the testimony of Gregory Fino, M.D., her family physician, Matthew Berger, M.D., a psychiatrist, and Richard Fischbein, M.D., also a psychiatrist. On February 1, 1988, Claimant presented herself to Dr. Fino complaining that she " 'just was not feeling well.' " (WCJ's Decision, Finding of Fact No. 8.) As Dr. Fino began treating Claimant's existing diabetes and arthritis, Claimant complained to Dr. Fino that she was experiencing problems with belching when nervous or anxious. After the symptoms persisted, Dr. Fino referred Claimant to a gastroenterologist, but still treated Claim-

---

1. This position required Claimant to provide the patients with·clean clothing and linens, including purchasing clothes and linens for the individual patients.

ant for her gastrointestinal problems. Ultimately, Dr. Fino diagnosed Claimant with irritable bowel syndrome caused by Claimant's psychological problems. Dr. Fino explained that anything related to Employer increases Claimant's anxiety, which triggers her bowel symptoms. Dr. Fino, therefore, indicated that Claimant should not return to employment with Employer.

On January 21, 1993, Dr. Berger performed an independent psychiatric evaluation of Claimant at the request of Employer. Dr. Berger noted that Claimant felt her change in positions at work was a "raw deal" and that friction had developed between Claimant and her co-workers. In addition, Dr. Berger indicated that Claimant developed anxiety, depression, stomach problems, sleeplessness, crying spells, loss of appetite, nervousness, jitters, irritability, a decreased frustration tolerance with inappropriate anger, and a general sense of sadness and isolation at the time Claimant was having disciplinary problems at work. Ultimately, Dr. Berger opined that Claimant's gastrointestinal complaints were "secondary" to her anxiety. Regarding Claimant's anxiety, Dr. Berger stated that, " 'there can be a causal relationship between her employment at White Haven Center and her present symptomatology ... [but] ... I found it difficult to evaluate whether her employment or her job description was unusual or abnormal.' " (WCJ's Decision, Finding of Fact No. 10.)

Finally, Claimant presented the testimony of her treating psychiatrist, Dr. Fischbein. Dr. Fischbein agreed with Dr. Berger that Claimant suffers from anxiety, depression and a phobia regarding White Haven Center. Dr. Fischbein opined that because of Claimant's psychiatric problems she is unable to return to work. In addition, he noted that Claimant's gastrointestinal problems occurred after her difficulties at work began and are "interrelated" with her psychiatric problems. Employer did not present any medical evidence in opposition to Claimant's claim petition.

By a decision and order circulated on January 12, 1996, the WCJ denied Claimant's claim petition, concluding that Claimant's claim was a mental/mental case, as distinguished from a mental/physical case, and that Claimant was therefore required to establish that she was subjected to abnormal working conditions. In reaching this conclusion, the WCJ, citing our decision in *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corporation)*, 168 Pa.Cmwlth. 488, 650 A.2d 1202 (1994), *petition for allowance of appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995), ruled that the medical evidence submitted by Claimant established that she was exposed to mental stimuli that caused anxiety and depression, and it was her mental injury that prevented her from returning to work. In deciding that this matter involved a mental/mental injury, the WCJ concluded that Claimant failed to prove that she was subjected to abnormal working conditions, especially in light of today's volatile employment environment, where the factors to which Claimant was exposed are becoming more and more common.[2]

Claimant appealed to the Board, asserting that she suffered a mental/physical injury, and, thus, the WCJ applied the wrong burden of proof to her case. The Board affirmed the WCJ's decision, stating that for there to be a mental/physical injury, under *Whiteside*, the mental stimulus must "result[ ] in a distinct and identifiable physical injury that limits the claimant's ability to work." (Board's Decision, p. 3.) The Board therefore concluded that, since Claimant's medical evidence did not unequivocally establish that she suffers from a separate and distinct physical injury apart from her anxiety and depression, it was not error for the WCJ to determine that Claimant's claim was mental/mental in

**2.** "[P]sychological stress factors" include "the change in her position ..., the loss of her seniority ..., the shift change from day to evening, and the three successive disciplinary actions against her." (WCJ's Decision, Finding of Fact No. 14.)

nature, and in finding that Claimant failed to prove abnormal working conditions. This appeal followed.

On appeal to this Court,[3] Claimant maintains that the Board and WCJ erred by determining that her claim was mental/mental in nature, rather than a mental/physical claim. Claimant argues that the Board erroneously relied on this Court's decision in *Old Republic Insurance Company v. Workers' Compensation Appeal Board (Mascolo)*, 726 A.2d 444 (Pa. Cmwlth.1999), in affirming the WCJ, rather than on *Whiteside*, which is most applicable to the present case.

The determination of whether a claimant's workers' compensation claim is classified as a mental/mental injury or a mental/physical injury has been the source of extensive litigation in this Court. The reasoning has been important, as the classification determined what the claimant had to prove to obtain benefits. If a claim was classified as mental/mental, a claimant had to prove that the mental injury was caused by abnormal working conditions; a standard that, at best, was difficult to overcome. In a mental/physical case, however, because of the objectivity of a physical injury, a claimant has not been saddled with the heightened burden of proving an abnormal working condition. And, where the classification of the claim is at issue, the claim had to be analyzed in order to determine whether the claimant was required to prove an abnormal working condition. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

In Pennsylvania we have recognized three discrete areas of law involving a psychological element. In *Volterano v. Workmen's Compensation Appeal Board*, 536 Pa. 335, 345, 639 A.2d 453, 457–458 (1994), the Supreme Court stated:

> Disabilities caused by psychological/mental elements may be considered

to be injuries under the Act and therefore compensable if the other elements needed to establish a claim are met. The influence of the psychological or mental element can be broken down into three discrete areas: (1) psychological stimulus causing physical injury (the mental/physical association), ... (2) physical stimulus causing psychic injury (the physical/mental association); and (3) psychological stimulus causing psychic injury (the mental/mental association). . . .

(Citations omitted.) Thereafter, this Court decided two salient cases, one of which involved the mental/mental classification and the other the mental/physical classification, together with the corresponding burden of proof required in each case. In *Old Republic*, we ruled that the claimant's claim was mental/mental in nature, and, therefore, the claimant was required to prove that her mental injury was caused by abnormal working conditions. In *Whiteside*, we ruled that the claimant's claim was mental/physical in nature. As a result, we held that the claimant was *not* required to prove abnormal working conditions.

▪ In analyzing a mental/physical claim, two common elements must be present: "(1) a psychological stimulus which causes a physical injury which continues after the psychological stimulus is removed; and (2) a disability, *i.e.*, loss of earning power, caused by the **physical** condition. . . ." *Old Republic* at 449. A mental/mental claim, however, explains a situation where a claimant is exposed to a psychological stimulus and subsequently develops a psychological injury. *Id.*

▪ Traditionally, the above mental/mental versus mental/physical analysis would have been germane to the result in this case. Recently, however, our Su-

---

**3.** Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

preme Court in *Davis v. Workers' Compensation Appeal Board (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168, 170 (2000), held "that where a psychic injury is claimed, **regardless of whether it is manifested through psychic symptoms alone or physical symptoms as well,** the claimant must establish that the injury arose from abnormal working conditions in order to recover benefits." (Emphasis added.) Thus, we need not decide whether Claimant's claim is mental/mental or mental/physical in nature, since, regardless of whether the psychological stimuli to which she was exposed resulted in physical and psychic, or merely psychic manifestations, the burden of proof, i.e., the requirement to prove abnormal working conditions, is the same in each instance.

■ In the present case, Claimant endured stress and anxiety related to the changes in her employment. Dr. Berger testified that Claimant suffers from anxiety, depression and a phobia regarding the White Haven Center. In addition, Dr. Berger noted that Claimant's physical problems, which occurred after her difficulties at work began, are "interrelated" with her psychiatric problems. Because Claimant suffers from psychic injuries, together with interrelated physical injuries, which were caused by a psychic stimulus, Claimant must, in light of *Davis,* prove abnormal working conditions, as the distinction between the mental/mental and mental/physical classifications concerning the corresponding burden of proof is no longer relevant.

■ Therefore, our present inquiry turns to whether Claimant established that she was subjected to abnormal working conditions, which is a mixed question of law and fact fully reviewable by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa. Cmwlth. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992). The WCJ considered this issue and determined that Claimant did not establish that she was subjected to abnormal working conditions. The WCJ found that Claimant's job change, shift change, loss of seniority, tense relationship with her co-workers, and subjection to disciplinary action did cause her stress, but in today's volatile employment environment, these factors did not amount to abnormal working conditions. Based upon our independent review of the record, we must agree. We therefore conclude, as the WCJ and the Board did, that Claimant did not establish that she was exposed to abnormal working conditions, and her claim petition was appropriately denied.

Accordingly, we affirm the decision of the Board.

### ORDER

NOW, August 3, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.