Kelly **FARMERY**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (City of Philadelphia), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 1999.

Decided June 21, 2001.

W. Michael Mulvey, Philadelphia, for petitioner.

Valerie H. Lieberman, Philadelphia, for respondent.

Before DOYLE, President Judge, KELLEY, Judge, NARICK, Senior Judge.

DOYLE, President Judge.

Kelly Farmery (Claimant), a former Philadelphia police officer, petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board), which reversed a decision of a Workers' Compensation Judge (WCJ) that had awarded her benefits because of a mental disability pursuant to the Workers' Compensation Act (Act).[1]

In 1991, after having worked as a patrol officer for the City of Philadelphia Police Department (Department) for one year, Claimant began to develop symptoms of pain and tenseness in her abdomen when her "car number" was called out and when she was asked to perform "priority jobs"[2] or to assist other officers, although she admitted that her job was basically the same as the job of every other patrol officer in the district. Following an incident involving a man with a knife in February of 1993, her pain became so severe that she was required to go to the emergency room at Frankford Hospital. Claimant initially treated with a gynecologist, but that doctor referred her to a

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1041.4; 2501–2626.

2. The record is devoid of any information regarding what exactly a "priority job" was, but we assume that it meant some type of an emergency situation which required "priority" police action.

gastroenterologist, Harvey B. Lefton, M.D., who informed her that her pain was from job-related stress. When she attempted to return to full-time work in February of 1993, her pain got worse. Claimant filed a claim petition on or about June 10, 1993, alleging that, as of May 1, 1993, she became disabled from a "spasmodic condition as a result of work-related stress," and the Department removed Claimant from active police work and assigned her to a desk job to alleviate her problems. Claimant worked this desk job from June 11, 1993 through December 20, 1993.[3] During this time her symptoms improved. At the end of this six-month period, however, Claimant stopped working and then used accrued sick leave until the Department terminated her from employment.

In support of her claim petition, Claimant presented the expert medical testimony of Dr. Lefton, who diagnosed Claimant as having "spastic irritable bowel," which, he stated, is a motility disorder of the bowel. (Dr. Lefton's deposition, December 8, 1994, p. 12.) Dr. Lefton testified that work-related stress caused Claimant's symptoms (Dr. Lefton's deposition, p. 13), and he recommended that Claimant change her diet to include high fiber foods and that she reduce her stress level. He also prescribed anti-spasmodic medication. Dr. Lefton linked Claimant's stress to "her concern about being out on the street and being in situations that were threatening to her and life-threatening." (Dr. Lefton's deposition, p. 16.) He testified that Claimant's condition in May of 1993 significantly interfered with her work as a police officer (Dr. Lefton's deposition, pp. 18–19), and noted that her condition improved after she was assigned to the desk job with modified duties. He further testified that, by July of 1994, her condition had "much improved," and he took her off medication, informing her that he did not need to see her again unless her symptoms returned. (Dr. Lefton's deposition, pp. 13–18.)

In opposition to Claimant's evidence, the City presented the expert medical testimony of Lawrence Spitz, M.D., who testified that Claimant did *not* have irritable bowel syndrome and that, accordingly, she was not *disabled* from performing her regular duty job as a police officer. (Dr. Spitz's deposition, dated January 23, 1995, pp. 12, 20.)

The WCJ accepted the opinion of Dr. Lefton as more credible and persuasive than the opinion of Dr. Spitz for the following reasons:

a) Dr. Lefton is Claimant's treating physician and, as such, his testimony can be given more weight;

b) Dr. Lefton's testimony is supported by Claimant's testimony that her condition worsened while at work, and [her] symptoms stopped when she left work;

c) Dr. Lefton's opinion is supported by the authoritative text (Spitz D–2) that states that stress has some causative effect on the irritable bowel syndrome; and

d) Claimant's condition improved to the point where she was removed from medication for her condition when the stress of normal police work was removed from her life.

(WCJ's decision, Finding of Fact No. 8(a)-(d).) The WCJ reached the conclusion that Claimant was disabled because of work-related stress and granted benefits.

The City appealed to the Board, which reversed the decision of the WCJ. The

---

**3.** Under the terms of the collective bargaining agreement between the Department's bargaining unit, the Fraternal Order of Police Lodge No. 5, and the City of Philadelphia (City), such a modified job could only last for six months.

Board concluded, *inter alia*, that Claimant did not meet the requirements of an injury under the Act as prescribed by *Old Republic Insurance Co. v. Workers' Compensation Appeal Board (Mascolo)*, 726 A.2d 444 (Pa.Cmwlth.1999), because Claimant's physical ailments were the direct result of the mental stress related to the daily "street work" of a police officer, and those symptoms did not continue to manifest themselves during the time when she was not working as a patrol officer on the street but was working in a modified desk job.

We pause here to note that the courts have previously recognized three distinct types of cases involving a psychological component. In *Volterano v. Workmen's Compensation Appeal Board*, 536 Pa. 335, 639 A.2d 453 (1994), the Supreme Court stated:

> Disabilities caused by psychological/mental elements may be considered to be injuries under the Act and therefore compensable if the other elements needed to establish a claim are met. The influence of the psychological or mental element can be broken down into three discrete areas: (1) psychological stimulus causing physical injury (the mental/physical association), *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981); (2) physical stimulus causing psychic injury (the physical/mental association); and (3) psychological stimulus causing psychic injury (the mental/mental association), *Martin*

*v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

*Volterano* at 345, 639 A.2d at 457–458.

■ Before this Court,[4] Claimant essentially now argues that she produced evidence establishing that she suffered from an identifiable and diagnosed condition of spastic colon, a **physical** disability, which resulted from the mental stress of her job as a police officer. She contends that the facts of her case are different from those in *Old Republic*, which was a mental/mental case, and that the Board's reliance on *Old Republic* is misplaced because she presented expert medical testimony, credited by the WCJ, that her work-related stress manifested itself in a **physical** injury. The City contends, on the other hand, that Claimant has not suffered a compensable "mental/physical" claim under the analysis this Court used in *Old Republic* because her physical symptoms resulting from the mental stress of her job did not disable her after she left the work place.[5]

The claimant in *Old Republic* suffered severe headaches, chest pains and an upset stomach due to a dramatic change in employment duties as a result of new supervision. Her physician diagnosed her as having an acute stress reaction. We determined that, where no physical manifestation of stress remained after the claimant ceased to work, and, where the claimant stops working due to stress and not from physical ailments, a mental/mental standard must be applied, meaning that there must be a finding of abnormal working conditions. We also concluded in

---

4. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Beth-energy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

5. The Board noted that no reference was made in the record that Claimant intended to pursue a claim for recovery under a mental/mental theory. It stated that, even if Claimant had pursued a mental/mental theory of recovery, Claimant failed to present evidence of abnormal working conditions, and, therefore, Claimant would be ineligible to recover under that theory as well.

*Old Republic* that the claimant's alleged mental injury, and not the alleged physical ailment, precluded the claimant from performing her job. Accordingly, we applied the mental/mental standard, reversed the Board's decision, and denied benefits.

This Court further determined in *Old Republic* that a claimant bears the burden of establishing all of the elements necessary to support an award of benefits, including the fact that she suffered an injury caused by her work. We stated that, in order to be compensable, a mental/physical injury must have two essential elements: (1) a psychological stimulus causing a physical injury which continues after the psychological stimulus is removed; and (2) a disability, *i.e.,* loss of earning power, caused by the physical condition rather than by the psychological stimulus. In other words, the claimant must establish that he/she cannot perform his/her pre-injury job because of the resulting **physical** injury which continues after the psychological stimulus is removed.

However, after our opinion in *Old Republic* was filed, our Supreme Court clarified the law in this area of compensable mental/mental and mental/physical injuries in *Davis v. Workmen's Compensation Appeal Board (Swarthmore Borough),* 561 Pa. 462, 751 A.2d 168 (2000). Succinctly, the High Court determined in *Davis* that claimants must prove abnormal working conditions in order to recover benefits in cases where a claimant asserts a mental injury that results in either mental **or** physical disabling symptoms.

In *Davis,* a police officer had encountered several stressful incidents during his career. He was diagnosed with post-traumatic stress disorder and specific work inhibition. Accompanying his psychological injury were physical manifestations of the psychological injury including shortness of breath, pressure in his chest, nervousness and muscle twitching with aches and pains. He also suffered from flashbacks of the stressful events during his career and had developed a shaking right hand.

The Supreme Court held that *the nature of the injury that was asserted,* and not the presence or absence of physical symptoms, was controlling, and stated:

> We hold that the standard to be applied to claims for workers' compensation benefits when the claimant asserts a psychic injury that has manifested itself through psychic and physical symptoms **is the same standard that we articulated in *Martin*:**[6] such a claimant must prove by objective evidence that he has suffered from a psychic injury and that the psychic injury is other than a subjective reaction to normal working conditions.

*Davis* at 479, 751 A.2d at 170 (emphasis and footnote added). The Supreme Court

---

6. In *Martin v. Ketchum, Inc.,* 523 Pa. 509, 568 A.2d 159 (1990), Martin's widow filed a fatal claim petition alleging that his suicide death resulted from job-related stress. Martin enjoyed a successful career for many years as a professional fundraiser for non-profit organizations. After he was removed from a major university campaign at the request of the client, he was assigned to a less prestigious account. He began seeing a psychiatrist and thereafter committed suicide. In that case, the referee granted fatal claim benefits. The employer appealed to the Board, which affirmed, but this Court reversed the Board. On appeal, the High Court reiterated the requirement that a claimant seeking to recover benefits for a psychic injury must prove by objective evidence that he has suffered a psychiatric injury, and he must also prove that the injury is other than a subjective reaction to normal working conditions. The Supreme Court thus upheld this Court's reversal of the decision below on the basis that the events preceding the suicide did not constitute abnormal working conditions.

found that the evidence failed to establish that Davis' post-traumatic stress disorder and related physical complaints were caused by abnormal working conditions.

■ This analysis in *Davis* preempts our prior analysis regarding a mental injury and resulting physical disability articulated in *Old Republic*. Under *Old Republic*, it would be analytically critical to determine whether Claimant's physical injury continued to manifest itself after the mental stimulus was removed. However, now that *Davis* takes us immediately to the "abnormal working conditions" analysis, we no longer are required to make a determination regarding whether Claimant's physical condition outlasted the mental stimulus. See *Daneker v. Workers' Compensation Appeal Board (White Haven Center)*, 757 A.2d 429 (Pa.Cmwlth. 2000).[7] As previously stated, whether Claimant has alleged a mental/mental or a mental/physical injury, she would still need to prove abnormal working conditions to recover benefits according to the Supreme Court's decision in *Davis*.[8]

---

7. In *Daneker,* the claimant alleged that abnormal working conditions resulted in job stress causing her to suffer a disabling major depression. She also alleged that she suffered from physical symptoms in the nature of agitation, nausea, abdominal pain and vomiting resulting from job-related stress. We noted that, under prior case law, we would have reached a determination of whether the case fell into a mental/mental or mental/physical category. But, under *Davis*, it is no longer necessary to make such a determination. We therefore determined in *Daneker* that the claimant's job change, shift change, loss of seniority, tense relationship with her co-workers, and subjection to disciplinary action caused her stress, but were not the result of abnormal working conditions.

8. Due to the Supreme Court's holding in *Davis*, we would now conclude that in all cases in which a claimant suffers a physical injury, or even death, as a result of mental stress from the work environment, the claimant must prove abnormal working conditions. This would be true even for heart attack cases.

In *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981), the Supreme Court dealt with the issue of whether a heart attack brought about by mental stress from work is a compensable injury under the Act. After five hours of working on an employment-related treatise which he was to present to colleagues in California, Krawchuk, an electrical engineer with Philadelphia Electric Company, suffered a fatal heart attack at home. The Supreme Court upheld an award of benefits to Krawchuk's widow, holding that, if a claimant proves that the heart attack was brought about by stress arising in the course of employment, and was related thereto, the claimant was entitled to benefits under Section 301(c) of the Act, 77 P.S. § 411.

In our estimation, the Supreme Court, by its *per curiam* order issued in *Erie Bolt Corporation v. Workers' Compensation Appeal Board (Elderkin)*, 562 Pa. 175, 753 A.2d 1289 (2000), confirmed its intention to overrule *Krawchuk*, and in fact did so *sub silentio*, at least to the extent that *Krawchuk* stands for the proposition that a heart attack caused by work-related mental stress is automatically compensable. In its order in *Erie Bolt*, the Supreme Court stated that "[t]he order of the Commonwealth Court is reversed based upon the decision in *Davis v. Workers' Compensation Appeal Board (Borough of Swarthmore)*, 561 Pa. 462, 751 A.2d 168 (slip opinion filed 2000)." To clarify the Supreme Court's intention in reversing this Court's order, we have designated our previously unreported decision as a reported Opinion by *per curiam* order issued May 30, 2001. The underlying facts outlined in our now published decision in *Erie Bolt v. Workers' Compensation Appeal Board (Elderkin)*, 777 A.2d 1169 (Pa.Cmwlth.1998), are essentially almost identical to the facts in *Krawchuk*. In *Erie Bolt*, the claimant filed a fatal claim petition alleging that her husband suffered a fatal heart attack following his contentious discharge from employment. She alleged that the repeated stress and tension to which her husband was subjected, and the sudden shock at the time he was told of his job termination, caused her husband's heart attack. The Commonwealth Court agreed that the acute stress of the decedent being fired from his job caused the decedent's fatal heart attack and, therefore, upheld the award of fatal claim benefits. The Supreme Court

Moreover, in another recent decision, *McCarron v. Workers' Compensation Appeal Board (Delaware County District Attorney's Office)*, 761 A.2d 668 (Pa.Cmwlth. 2000), we explained that *Davis* "effectively nullified the mental/mental v. mental/physical distinction[,]" *McCarron* at 671, and we determined that the claimant, a detective, failed to prove that increased stress due to an increase in work load and case complexity amounted to abnormal working conditions. We therefore affirmed a denial of benefits for hypertension, anxiety, nervousness, insomnia and loss of concentration.

■ We have recognized in the past that some jobs are, by their very nature, highly stressful, especially the job of a police officer. We have stated that

> for a high stress working environment to constitute a legally sufficient abnormal working condition there must be a finding either that claimant's work performance (as distinguished from the mere job description) was unusually stressful for that kind of a job or a finding that an unusual event occurred making the job more stressful that it had been.

*Clowes v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 162 Pa. Cmwlth.583, 639 A.2d 944, 948 (1994) (quoting *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay))*, 87 Pa. Cmwlth. 558, 487 A.2d 1053, 1059 (Judge Doyle, concurring and dissenting). Although a claimant, such as a police officer, in a normally highly stressful working environment may not have a higher burden of proof, it is often more difficult to establish abnormal working conditions in a job that is, by its very nature, highly stressful. A claimant in that situation must establish that the occurrence which disabled him or her, or the incident which caused the injury, is so much more stressful, that it is **abnormal** even for that job, which is already highly stressful as a normal incidence of that position. *Young v. Workers' Compensation Appeal Board (New Sewickley Police Department)*, 737 A.2d 317 (Pa.Cmwlth.1999); *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten)*, 556 Pa. 400, 728 A.2d 938 (1999).

■ The question of what constitutes abnormal working conditions is, of course, a mixed question of law and fact, that is, it is a factual conclusion, which the Court must review. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Cmwlth.308, 595 A.2d 725 (1991), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992). In the case *sub judice*, Claimant's symptoms developed at the mere request that she perform certain jobs or assist other officers. Claimant did not allege that she worked under abnormal working conditions, nor did she offer any testimony to suggest that she was requested to perform work above and beyond her normal duties as a police officer, such that would amount to *abnormal* working conditions. Claimant testified regarding one specific incident, which brought on severe symptoms. Her testimony that, "I was confronted with a man with a knife and the pain got very severe and wouldn't go away," [9] does not support a finding of abnormal working conditions for a police officer.

then reversed this Court's decision as indicated above. Under *Davis*, it is clear that, even in heart attack cases (where stress is the psychological stimulus), it will now be necessary to prove that abnormal working conditions caused the stress that, in turn, resulted in the heart attack.

9. Notes of Testimony, dated May 20, 1994, p. 5.

Accordingly, we affirm the order of the Board.

### ORDER

**NOW,** June 21, 2001, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.