IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Vazquez,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              :  No. 536 C.D. 2022
                                        :  Submitted:  December 30, 2022
Arthur Jackson Company                  :
(Workers' Compensation Appeal           :
Board),                                 :
                                        :
                    Respondent          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED:  August 4, 2023


        Brian Vazquez (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) that affirmed the decision of a
workers' compensation judge (WCJ) denying his Claim Petition for benefits under
the Workers' Compensation Act (WC and Act, respectively).[1]  We affirm.

        On June 15, 2020, Claimant filed a Claim Petition in which he alleged,
*inter alia*, that he suffered a work-related injury in the nature of "injury to lower
back with left lower extremity radiculopathy" while in the course of his employment
as a project manager for the Arthur Jackson Company (Employer).  Certified Record

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Docket (CR Dkt.) Entry 2 at 1.  Claimant also alleged that he suffered the injury while he "was moving furniture and felt a sharp pain in [his] lower back," and that he notified his supervisor of the work-related injury on March 10, 2020.  *Id.*  On June 23, 2020, Employer filed a timely Answer to the Claim Petition in which it denied all of the material allegations raised in the Claim Petition, specifically denying the date, location, and occurrence of the alleged work-related injury, and demanding strict proof thereof.  *See* CR Dkt. Entry 4 at 1.  On June 30, 2020, Employer issued a Notice of Compensation Denial, asserting that Claimant did not suffer a work-related injury.  *See* CR Dkt. Entry 20 at 2.  Hearings before a WCJ on the Claim Petition ensued.

In relevant part, Claimant testified that he started working with Employer as a project manager in July 2019, and his job duties included building maintenance, payroll, hands-on training, inspections, and completing work orders. He stated that on February 27, 2020, he was moving furniture with Ricardo Lively, an employee in the building, and felt a sharp pain in his back.  He remained at the site for the rest of the day, but did no physical work and took an Aleve when he got home.  He worked the following day, but did no physical work, and was then out of work for a week due to his injury.  On March 2nd or 3rd, he e-mailed Employer that he would be out of work that week due to his back, but he did not tell Employer how he injured his back.  On March 4th, he saw his primary care physician, who gave him medication, but he did not recall whether he told that doctor how he injured his back.  He agreed that none of the doctors' notes that he submitted to Employer contained anything about a work-related injury.

On March 10, 2020, Claimant then returned to work at a light-duty job and told his director, Charles Biney (Biney), that he injured his back.  He had a

2

number of conversations with Biney about the work-related injury; however, he did not fill out an incident report because he was too busy at work. From April 6, 2020, to April 20, 2020, Claimant worked from home due to Employer's COVID-19 policy. That same week, Employer asked him to return to work, but he did not do so because he did not want to be exposed to COVID-19 and because of his back pain. Claimant has never returned to his pre-injury job and stopped working on April 20, 2020.

Ultimately, Claimant's family doctor referred him to a pain management doctor, Dr. Ng, who performed an injection to his back. His attorney then referred him to Stephen Ficchi, D.O. (Dr. Ficchi), who prescribed medication and physical therapy. Claimant testified that he has excruciating low back pain down his left leg to his foot, his foot is numb, and the pain radiates into his buttocks. He cannot straighten his back for most of the day, and he can only walk or sit for about 30 minutes. He does not feel capable of performing his pre-injury job due to severe pain and drowsiness caused by his medications.

In support of his Claim Petition, Claimant also submitted the deposition testimony of Dr. Ficchi. Dr. Ficchi is board certified in general family medicine. He first saw Claimant on June 18, 2020, who complained of low back pain with numbness and tingling down the left leg, and presented a history of the work injury and medical treatment. Physical examination showed spasm and significant range of motion deficits. He reviewed a May 11, 2020 lumbar magnetic resonance imaging (MRI) study, which showed a disc bulge with an annular fissure and a central disc extrusion at the L4-5 level. He then ordered a July 15, 2020 electromyography (EMG), which showed a left L-5 radiculopathy. Dr. Ficchi's diagnoses include lumbar strain and sprain, myofascial pain syndrome, extruded/protruded disc at the

3

L4-5 level, and active L5 radiculopathy on the left side. He opined that these diagnoses are a direct result of Claimant's work injury and that Claimant cannot return to work at his pre-injury job. He stated that Claimant can do sedentary work three to four hours per day, three days a week, to start.

Employer presented the deposition testimony of Biney, who stated that he is one of Employer's two operations managers and he was Claimant's direct supervisor. During his work orientation with Melissa Usher (Usher), Employer's human resources director, Claimant was trained on the need to be aware of work injuries, to fill out incident reports, and to immediately submit them to the claims department. In fact, Claimant has submitted incident reports for other employees.

Employer also has a work order system under which he assigns work orders to the staff, the staff all signs the work order when the task is completed, and the signed work order is returned to the administrator. Claimant did not sign a work order for moving furniture on February 27, 2020, or any other day, and Claimant did not tell him that he was moving furniture that day. Claimant is not permitted to do physical work because the union does not allow managers to do cleaners' work. Rather, the managers under Claimant inspect jobs and manage workers. There was a February 27, 2020 work order to move furniture, but he did not know who completed it because it was not signed.

Biney testified that Claimant never reported a work injury to him and he first learned of the purported injury when Claimant e-mailed Usher in June 2020.[2]

_____

[2] Employer also submitted a June 7, 2020 e-mail from Claimant to Usher that he could not report to work the next day because he had had excruciating pain since the beginning of March after he completed a furniture move at the work site. He stated that he was unsure as to when he could return to work, and requested that she send him paperwork for a leave under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§2601, 2611-2620, 2631-2636, 2651-2656. *See* CR Dkt. Entry 25.

**(Footnote continued on next page…)**

Claimant e-mailed him on March 3rd, simply stating that he would not be in because he was not feeling well. Later that day, Claimant told Biney over the telephone that he had a serious spinal condition, but he never indicated that the condition was work related.

Biney stated that this was when the COVID-19 pandemic began, and Claimant indicated that he did not want to be part of Employer's team that stays to service buildings because he had underlying conditions. When Claimant said that he could work from home, Biney rejected the offer. Claimant was then given time off when he said that he had to take care of his father. Claimant was terminated on June 16, 2020, after he stopped reporting for work.

Employer also presented the records from Jefferson Family Medicine (Jefferson), the practice of Claimant's primary care physician. *See* CR Dkt. Entry 24. In relevant part, the records indicate: (1) Claimant was seen on March 4, 2020, complaining of acute bilateral back pain with left-side sciatica, noting that he had chronic intermittent back pain for 15 years, which worsened two days earlier with "no triggers"; (2) Claimant was seen on April 7, 2020, for viral exposure with no mention of back pain; (3) Claimant was seen on April 20, 2020, and the diagnoses were acute and chronic bilateral back pain with left-sided sciatica noting that the low back pain was a "chronic issue"; (4) Claimant was seen on May 21, 2020, when he complained of back pain and left leg swelling, and was concerned about deep vein thrombosis, and the diagnoses were tightness of leg fascia and acute bilateral low back pain with left-sided sciatica; (5) Claimant was seen on June 9, 2020, when the

---

Employer also submitted a June 8, 2020 e-mail exchange in which Usher indicated that Claimant did not qualify for FMLA leave. Claimant responded asking if he would be eligible for WC benefits if his back did not improve since he moved furniture at the end of February. Usher then responded that Employer was not aware of him moving furniture. *See id.*

5

diagnoses were generalized anxiety disorder and lumbar pain with radiculopathy, and Claimant complained of very severe low back pain and wanted it noted that "This Occurred at Work in February. Was Moving Furniture at Work."; and (6) Claimant was seen on June 11, 2020, when the diagnoses were the same. *See id.* at 4, 21-22, 31-32, 39-40, 49-50, 57. The records from that appointment also state, in relevant part:

> Patient [s]tates he reported accident at work moving tables to supervisor who said to make an incident report, but never did. Patient is wishing to confirm that the accident happened at work and confirm it is in the medical recor[d]. I explained that I did not see him for this problem originally. I said it is a possibility the lifting at work caused it, but I cannot say for certain.

*Id.* at 58.

Employer also submitted the deposition testimony of Armando Mendez, M.D. (Dr. Mendez), a physician board certified in orthopedic surgery. Dr. Mendez stated that he performed an independent medical evaluation (IME) on October 28, 2020, at which Claimant complained of pain in his back and down his left leg and provided a history of his alleged work injury and his treatment.

The WCJ summarized Dr. Mendez's relevant testimony as follows:

> c. On physical examination, Claimant walked with a normal gait. There was discomfort with palpation of the lower left lumbar musculature, but no spasms. Claimant exhibited a very limited range of motion. Claimant complained of lower back pain with simultaneous spine and pelvis rotation, which is not an anatomically explainable complaint because the rotation occurs through the hip joint and not in the lower back. Dr. Mendez could not examine him in the prone position because Claimant said that caused him too much pain. With straight leg raising testing, Claimant complained of low back pain, but no radicular pain.

6

In the supine position, when the doctor tried to bend his knees and hips, Claimant complained of severe pain on the left side, which was inconsistent with the fact that he sat in that position, with his hip at 90 degrees, for about 20 minutes while the doctor questioned him. There was normal sensation, strength[,] and reflexes in both lower extremities with no atrophy or asymmetry. Claimant had full range of motion of the hips, knees[,] and ankles. Examination of the knees and ankles was normal with no effusion, instability, or meniscal pathology. Objectively, it was a normal physical examination.

CR Dkt. Entry 6 at 9.

Dr. Mendez reviewed the EMG study, which suggested a left L-5 radiculopathy, but noted that there was not much in the accompanying examination to support that diagnosis. He also reviewed the report of the MRI study, which showed an L4-5 disc bulge and extrusion, loss of disc height and signal, and disc desiccation consistent with a chronic degenerative process, with no impingement, compression or displacement of the left L-5 nerve root; however, it does not support the EMG finding or Claimant's subjective complaints, and does not indicate an acute injury. He also reviewed the May 29, 2020 letter from Dr. Ng. releasing Claimant to return to full-duty work on June 8, 2020.

Based on the initial records available for review at the time of the IME, and Claimant's history regarding his job duties and the occurrence of the alleged injury, Dr. Mendez opined that Claimant had sustained a strain and sprain from which he was fully recovered. He subsequently reviewed additional records and Dr. Ficchi's deposition testimony, noting that the records from Claimant's primary care physician contain no entry about a work-related injury and suggested that Claimant had a chronic back issue. The first mention of a work-related injury by Claimant was on June 9, 2020.

Ultimately, the WCJ made the following relevant credibility determinations:

9. I have carefully reviewed Claimant's testimony in conjunction with the other evidence, and do not find it credible. Claimant did not seek medical treatment on the day of his alleged injury, February 27, 2020; he finished that day and thinks he also worked the next day. He then e-mailed Employer on March 2 or 3 that he would be out of work due to his back, but did not tell Employer he had suffered a work-related injury. He asked Employer about short[-]term disability. The records from his primary care practice, [Jefferson], contain no mention of any work injury for visits in March, April[,] and May 2020; in fact, the March 4, 2020 note indicates that Claimant had chronic intermittent back pain for 15 years, which worsened two days before [] [this would have been March 2] with "no triggers." It was not until June 9 that the Jefferson physician wrote, "Patient wants it Noted that This Occurred at Work in February. Was Moving Furniture at Work." The first indication that he told Employer about an alleged work injury was June 7; although Claimant testified that he told [Biney] on March 11 about the incident moving furniture, Claimant never completed an incident report, even though he was familiar with this process because he was a supervisor and because he had a previous [WC] claim himself. Although Claimant said he signed a work order after moving furniture on February 27, 2020, [Biney] said there was a work order[,] but it was not signed by anyone. [Biney] said Claimant told him he had a serious spinal condition[,] but did not say it was due to a work injury, and never gave him a doctor's note. Although Claimant said in a June 8 e-mail to [Usher] that he had "e[-]mailed the site and copied [Biney] on it," Claimant did not produce any such e[-]mail; the only e[-]mail to the site was the April 6 e[-]mail to [another employee] about potential COVID[-19] exposure. The e[-]mails and medical records, in conjunction with [Biney's] testimony, indicate that Claimant was anxious about COVID[-19] exposure and wanted to work at home, which [Biney] would not allow,

8

and that in fact, Claimant never returned to work after his early April COVID[-19] concerns.

10. I have carefully considered the testimony of [Biney], in conjunction with the other evidence, and find it credible. [Biney's] testimony is supported by the e[-]mails between Claimant and [Usher], and it was only after the pandemic began and Claimant was not permitted to work at home that he asked the Jefferson physicians to document in his record that he alleged a work injury and began to inquire about [WC]. As noted above, Claimant produced nothing to support his testimony – which I do not find credible – that he verbally told [Biney] after being out a week that he had a work injury; he did not produce the e[-]mail about the work injury he said he sent the site and copied [Biney] on, and he admitted he did not complete an incident report.

11. I have carefully reviewed the testimony of Dr. Ficchi and Dr. Mendez in conjunction with the other evidence, and find the testimony of Dr. Mendez more credible. Dr. Mendez is board[]certified in orthopedic surgery. Dr. Mendez's opinions are supported by the fact that Claimant did not initially report a work injury to his employer or his treating doctors at [Jefferson], and by the fact that the MRI documents degenerative changes consistent with Claimant's previous back injury and the Jefferson notes that indicated Claimant had a "chronic" low back condition. Dr. Ficchi is board[]certified only in family practice. He was not Claimant's initial treating physician and did not see Claimant until four months after the alleged work injury when Claimant was referred by counsel.

CR Dkt. Entry 6 at 10-11.

Based on the foregoing, the WCJ found "that Claimant did not sustain a work injury on February 27, 2020 or any other date," and concluded that he failed to sustain his burden of proving such to support the award of WC benefits. CR Dkt. Entry 6 at 11. Accordingly, the WCJ issued an order denying Claimant's Claim

Petition, and the Board affirmed the WCJ's order on appeal. Claimant then filed the instant petition for review of the Board's order.

Claimant's sole claim on appeal[3] is that the Board erred in affirming the WCJ's decision because it is not a "reasoned decision" as required by Section 422(a) of the Act.[4] Specifically, Claimant asserts that the WCJ's finding that he did not sustain a work-related injury constitutes an arbitrary and capricious disregard of Dr. Mendez's testimony that Claimant had sustained a low back strain and sprain that had resolved at the time of his October 28, 2020 IME. As a result, Claimant contends, the WCJ should have at least granted the Claim Petition from the date of injury, February 27, 2020, to the date of the IME. We do not agree.

As this Court has previously explained:

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[4] 77 P.S. §834. Section 422(a) states, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

As exhaustively recounted above, the WCJ clearly complied with the foregoing requirements by extensively outlining the bases for her comprehensive credibility determinations.

10

In a claim petition, the claimant bears the burden of proving all of the elements necessary to establish entitlement to benefits under the Act. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, [634 A.2d 592, 595 (Pa. 1993)]. [The c]laimant must prove that his injury arose in the course of employment and was related thereto. *Krawchuk v. Philadelphia Electric Company*, [439 A.2d 627, 630 (Pa. 1981)].

Here, [the c]laimant testified that he sustained injuries following a slip and fall . . . in the course and scope of his employment. The WCJ did not believe [the c]laimant. No other witnesses corroborated the slip and fall. . . . [The c]laimant asserts that [the e]mployer's medical witness [(doctor)] corroborates [his] testimony. [The d]octor took a history from [the c]laimant regarding the alleged work incident and based his medical diagnosis on the assumption that [the c]laimant had fallen. [The doctor] based his opinion on causation entirely upon the history provided to him by [the c]laimant, which the WCJ rejected. If the WCJ rejects the relied-upon information, then expert medical testimony premised upon the expert's assumption of the truthfulness of the information provided is not competent. *See Sewell v. Workers' Compensation Appeal Board (City of Philadelphia)*, 772 A.2d 93, 98 (Pa. Cmwlth. 2001). Moreover, acceptance of a history of an injury by an employer's medical expert for purposes of rendering a medical diagnosis does not constitute an admission or concession by the employer that the injury was work[]related. Ultimately, [the c]laimant, not [the e]mployer, had the burden to prove that [he] sustained a work-related injury. The record lacks competent evidence supporting [the c]laimant's claim petition because the WCJ discredited [the c]laimant's testimony and rejected the existence of any work-related injury.

*Wrecsics v. Workers' Compensation Appeal Board (National Carriers, Inc.)* (Pa. Cmwlth., No. 754 C.D. 2012, filed October 26, 2012), slip op. at 6-7.[5]

---

[5] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

Likewise, in the instant case, there is simply no evidence supporting Claimant's Claim Petition because the WCJ discredited Claimant's testimony and rejected the existence of any work-related injury. The fact that Dr. Mendez rendered an opinion based on the false history that Claimant provided is of no moment, and does not constitute an admission, concession, or competent evidence that a work-related injury occurred in the first instance. As a result, the Board did not err in affirming the WCJ's order denying Claimant's Claim Petition.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Vazquez,       :
            :
      Petitioner :
            :
    v.       : No. 536 C.D. 2022
            :
Arthur Jackson Company   :
(Workers' Compensation Appeal :
Board),         :
            :
      Respondent :

# **O R D E R**

AND NOW, this 4th day of August, 2023, the order of the Workers' Compensation Appeal Board dated May 16, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge