521 A.2d 980

Robert J. Bruckner, Petitioner *v.* Workmen's Compensation Appeal Board (Lancaster Area Vo-Tech), Respondents.

Submitted on briefs December 11, 1986, to Judges MACPHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Daniel J. Allan,* for petitioner.

*Niki Ingram,* with her, *Amy Sassler,* for respondent, Lancaster Area Vo-Tech.

OPINION BY SENIOR JUDGE BARBIERI, March 3, 1987:
Before this Court in this workmen's compensation case is the petition of Robert J. Bruckner, Claimant, seeking review of an order of the Workmen's Compensation Appeal Board (Board), which sustained a referee's decision disallowing compensation benefits. We will affirm.

Basically, the findings of Referee Troilo establish that on June 2, 1977 Claimant, an Instructor in Commercial Arts for the Employer, Lancaster Area Vo-Tech, suffered an emotional reaction to an event that took place in his classroom which is described by Referee Troilo as follows:

3. On June 2, 1977, Claimant alleged that a young man who was not a student in his class came into his classroom, asked permission to get a musical record that belonged to his brother, and went into one of the drawers in one of the classroom's tables. Claimant testified: '. . . it seemed that everyone was taking issue with— factions had apparently been growing, which I

knew nothing about; and there were charges and countercharges concerning the right to a possession of a record. Anyway, the voices got more than loud, and the language got pretty bad, and there were threats made. I frankly thought that it got beyond me to handle it. I don't know whether it was coincidental or I can't remember whether I had called on the loud speaker for some assistance, but it wasn't long thereafter that the assistant principal—his name was Swarr—entered the room. It got to be pretty bad, and I felt helpless in the matter. I didn't know whether the threats were directed at me or what, but I found myself in the middle.'

4. Claimant testified that after the incident, he began to shake, that he never remembered shaking before, that his voice was stammering, and that he didn't have control of himself.

R.R. 360a.

Claimant resumed teaching in September of 1977, losing very few days. On January 26, 1978, Claimant suffered another breakdown similar to that following the incident on June 2, 1977, this one resulting from the occurence of a tour of his classroom, something that occurred rather routinely. He became disabled and was hospitalized and has apparently not returned to work since that time.

Testimony by the school's principal was that tours such as the one which caused Claimant's breakdown in January of 1978 were customary; that Claimant was known to the witness since 1971; that in several respects Claimant had been inept in his role as teacher in the institution; and that he had had unsatisfactory ratings in evaluations in 1973 and 1974.

The medical testimony given by George J. Selsman, M.D., Claimant's physician, called by Claimant, was

that Claimant suffered an anxiety state, severe and reactive to physical threats, as early as January, 1975. Dr. T. Allan Ramsey, Board Certified in Neurology and Psychiatry, also called by Claimant, testified that Claimant was suffering from manic-depressive illness, "a disorder where people have mood swings into depression and a tendency for recurrence of these mood swings." Referee's finding No. 16. The referee found that Dr. Ramsey's testimony was based on an objectionable hypothetical question but, also, that his opinion "was not given with unequivocal medical certainty." Referee's finding No. 17.

Dr. Anthony Stephen Tornay, Board Certified in Neurology and Psychiatry, called by the Employer, testified at length concerning the nature of manic-depressive illness and concluded, as summarized in the Referee's finding of fact No. 19, as follows:

19. Dr. Tornay testified that based upon a reasonable degree of medical certainty, the facts related by Claimant in his testimony did not have a causal relationship to his condition. He said: 'That this man already years before had emotional instability as I have already in the description of the disease stated, that at time his emotional disorder may be mild and controlled and at other times may be out of control.' Moreover, Dr. Tornay testified with reasonable medical certainty that the June 2, 1977 and January 26, 1978 incidents were not causally related to Claimant's condition.

R.R. 363a.

The referee concluded that, based on the evidence as detailed in his findings, "Claimant did not sustain a compensable injury," concluding that Claimant's petition should be dismissed. His order which followed, dismissed the Claim Petition, and the Board affirmed,

with the opinion writer for the Board reversing as error a conclusion by the referee that proper notice was not given, but nevertheless, affirming the referee's disallowance. Members of the Board who joined, stated: "We do not concur in the remarks concerning notice. However it is only one aspect of the case."

At the outset, we note that on an appeal such as this one, our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed, or whether the referee's critical findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement System,* 512 Pa. 377, 517 A.2d 523 (1986); *Kear v. Workmen's Compensation Appeal Board (Fairman Drilling Co.),* 102 Pa. Commonwealth Ct. 193, 517 A.2d 586 (1986).

Petitioner contends that (1) the referee erred in characterizing the testimony of Dr. Ramsey as incompetent, (2) in admitting evidence as to the competency of the Claimant as an instructor, and (3) in making findings of fact which capriciously disregarded the competent evidence of the Claimant.

Considering first the Claimant's third contention, we must note that the capricious disregard standard has been disallowed by our Supreme Court in favor of the simple test of whether or not the findings are supported by substantial evidence. *Estate of McGovern.*

Also, we find no merit in Petitioner's first contention, that the referee improperly discredited the testimony of Dr. Ramsey, since we find that Dr. Ramsey's opinion testimony was not adequately unequivocal and, in any event, could be disregarded by the referee in favor of other medical testimony in the case. Dr. Ramsey testified:

Doctor, based on this history and these facts that I've asked you to assume as true, your examina-

tion and treatment of Mr. Bruckner, do you have an opinion, which you can express with reasonable medical certainty, as to the cause of Mr. Bruckner's psychiatric problems such as you diagnosed as manic-depression?

. . . .

A. (Continuing) Yes, Mr. Bruckner was admitted to the V. A. Hospital because he was suffering from an episode of depression, and the events that are described in the medical record that he related as having happened at the school are certainly very stressful events; and often stressful events will precipitate an episode of depression. I think in the case of Mr. Bruckner that *most likely* that is what happened. (Emphasis added.)

R.R. 87a and 88a.

While it may be questionable whether a medical opinion that causal relationship is "most likely" is inadequately unequivocal,[1] nevertheless, there was no error here, since the referee was free to prefer and accept the testimony of Dr. Tornay which denied causal relationship. It is clear, of course, that the referee's acceptance of the medical opinion of one expert medical witness over another is within his prerogatives and certainly is not the basis for a contention that such selection constitutes reversible error. *City of Hazleton v. Workmen's Compensation Appeal Board (DeCusatis)*, 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978).

---

[1] In *Wells/Richard Mfg. Co. v. Workmen's Compensation Appeal Board (Gross)*, 69 Pa. Commonwealth Ct. 179, 450 A.2d 766 (1982), we sustained an award where a medical witness stated that claimant's heart attack "in all likelihood . . . was related to [claimant's] activities of January 13, 1978," but there was also in *Wells/Richard* other unequivocal expert testimony establishing a legally acceptable causal relationship.

Finally, we find no merit in Petitioner's contention that the referee erred in allowing into evidence testimony as to Claimant's competence as a teacher. Since the crux of this case was whether or not Claimant's behavior which caused his disability was part of his on-going emotional instability brought on by his manic-depressive illness, or whether the behavior was attributable to events during his classroom sessions such as those on June 2, 1977 and on January 26, 1978, it was relevant to offer testimony as to his behavior generally, as compared with his reaction to such specific events as detailed by Claimant. Accordingly, we find no error in the admission of such testimony.

While we agree with the majority of the Board that the notice issue is non-determinative in this case because of other findings against Claimant which are clearly supported by substantial evidence, we note that specific notice is no longer required under the provisions of The Pennsylvania Workmen's Compensation Act, *Katz v. Evening Bulletin,* 485 Pa. 536, 403 A.2d 518 (1979). *Beaver Supermarket v. Workmen's Compensation Appeal Board (Sheldrake),* 56 Pa. Commonwealth Ct. 505, 424 A.2d 1023 (1981).

In view of the foregoing, there being no demonstrable, reversible error, we will affirm the order of the Workmen's Compensation Board.

ORDER

Now, March 3, 1987, the order of the Workmen's Compensation Appeal Board, No. A-85411, dated April 19, 1984, is hereby affirmed.