545 A.2d 971

Township of Haverford, Petitioner *v.* Workmen's Compensation Appeal Board (Angstadt), Respondents.

Submitted on briefs June 14, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Peter J. Weber,* with him, *Clifford Goldstein, Rawle & Henderson,* for petitioner.

*Leonard V. Tenaglia,, Richard, DiSanti, Hamilton & Gallagher,* for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 10, 1988:

The Township of Haverford (Employer) petitions for review of the order of the Workmen's Compensation Appeal Board (Board) that granted the fatal claim peti-

tion of Rose C. Angstadt (Claimant), which asserted that her husband, Charles R. Angstadt (Decedent), died of a myocardial infarction precipitated by stressful demands made upon Decedent by his Employer. We affirm.

Decedent died on October 17, 1983, at the age of 53. For the last 27 years of his life, Decedent was employed as a police officer for the Haverford Police Department. During the last six years of his life, Decedent held the position of Lieutenant and commanding officer of the investigations division directly under the Chief of police, James A. Myers. Decedent was responsible for reviewing all reported incidents involving the police, assigning and supervising investigators on cases, approving search and arrest warrants, and preparing internal reports and memoranda for the Chief of police. In addition to these duties, Decedent also served a rotating shift as duty Lieutenant in command of the department, during which he would be "on call" during weekends, although not actually in the office.

Decedent reported directly to Chief Myers in the performance of his duties. Several other police officers testified that Chief Myers was a harsh and overbearing superior who made excessive demands on his men. The officers stated that on numerous occasions Decedent upon being summoned to the Chief's office would look frightened and after emerging would appear upset, very distressed and physically drained. The referee specifically found that Decedent's work environment under Chief Myers was unusually stressful and that in and before September of 1983, Decedent was involved in a series of abnormal, stressful incidents at work (Referee's Finding of Fact No. 7, R.R. 8a).

On September 7, 1982, Chief Myers assigned Decedent to prepare an internal report on a criminal case involving one Edward Shimko, who had been arrested

on what the Chief believed to be an exaggerated charge of aggravated assault after a minor domestic dispute. Claimant testified that the Chief wanted this report turned in by 9:00 a.m. on September 13, 1983 (R.R. 34a). Chief Myers does not remember this but does state he wanted the report before the preliminary hearing in the case. The preliminary hearing was scheduled for September 15, 1983. On September 8 and 9, 1983, Chief Myers held what he termed "conferences" with Decedent concerning this report (R.R. 77a). But another officer testified that on Friday, September 9th, Decedent told him that he just had spent forty five minutes getting "reamed" by the Chief over the report and that Decedent appeared very pale, shaken, and so upset his voice was cracking (R.R. 48a).

That weekend Decedent remained on an "on call" status as duty officer. On Monday, September 12, 1983, Decedent began to write the report at home. Claimant testified he appeared very nervous and was interrupted by three phone calls from the police station. Claimant stated that as Decedent finished the report he began crying and said he did not know how he could explain the incident (R.R. 32-34a). Decedent then left the house to drive his son to the local hospital where the son had an appointment with an outpatient surgical unit. In August of 1983, Decedent's son had been involved in an automobile accident in New Jersey and was subsequently arrested for driving under the influence. He needed to see a plastic surgeon for injuries sustained to his tongue and two front teeth.

While waiting at the hospital for his son's consultation, Decedent suffered severe chest pains and was immediately rushed into intensive care where his condition was diagnosed as acute myocardial infarction. Claimant visited her husband in intensive care where he told her he was sorry the report he was working on

was not typed, but that it should be handed in Tuesday morning (R.R. 36-37a). Decedent remained in intensive care until he died on October 17, 1983, from ventricular fibrillation due to acute myocardial infarction (R.R. 194-196a). An autopsy revealed that Decedent had severe coronary arteriosclerosis. The referee concluded that Decedent's myocardial infarction was precipitated by the excessively stressful demands of Employer and granted Claimant's fatal claim petition. The Board affirmed.

On appeal, Employer contends that the referee's decision was not supported by substantial, competent evidence in that he relied on lay witnesses who were incompetent to testify as to the stresses on Decedent. Employer further contends that by accepting Claimant's proposed findings of fact and conclusions of law, the referee failed to make independent factual findings and that Claimant's medical expert improperly based his opinion on a history given by Claimant six months after Decedent's death and not on facts of record. We find that the evidence offered was competent and therefore constitutes substantial evidence to support the referee's findings.

A claimant seeking to recover benefits from the death of a worker from heart attack must show only that the heart attack was causally connected to the stress of the worker's normal work. *Krawchuk v. Workmen's Compensation Appeal Board (Philadelphia Electric Co.)*, 497 Pa. 115, 439 A.2d 627 (1981). The claimant does not have to prove, if the heart attack occurred off employer's premises, that the decedent was engaged in the furtherance of employer's business at the express or implied request of employer. *Krawchuk*.

In the present case, five police officers testified as to their personal experiences with Chief Myers over a period of years, what type of man he was like to work for;

and their observations of Decedent immediately before and after he saw Chief Myers. Employer vigorously objected that these witnesses were not competent to testify as to the degree of stress placed on another individual. After these five witnesses testified, Claimant presented five more police officers as witnesses. In order to save time, Claimant's counsel made an offer of proof that their testimony would be the same as the previous witnesses. Over Employer's objections, each of the witnesses swore that their testimony would be substantially the same as the other witnesses.

Employer misses the point that these witnesses were not offered as expert witnesses on stress, but merely to describe the general condition of the work environment and their personal observations of Decedent in it. As our Supreme Court noted in *Krawchuk:*

> Not infrequently, a stress heart attack is a gradual injury wherein the pressures and strain of the job—physical, mental, or both—take their toll in small doses until, at some point, those doses in the aggregate push the heart past its limits. . . .

*Krawchuk* at 123, 439 A.2d at 631. Testimony concerning the work environment and the pressures and strains of the job is entirely competent to establish the background against which Decedent's experiences must be measured. *See City of Clairton v. Workmen's Compensation Appeal Board (Cantrell),* 96 Pa. Commonwealth Ct. 190, 506 A.2d 537 (1986). Testimony about the manner in which the Decedent performed his work, his appearance, demeanor, and emotions has always been admissible. *See Bruckner v. Workmen's Compensation Appeal Board (Lancaster Area VoTech),* 104 Pa. Commonwealth Ct. 290, 521 A.2d 980 (1987); *Griesinger v. v. Workmen's Compensation Appeal Board (Atlantic Richfield Co.),* 94 Pa. Commonwealth Ct. 332, 503

A.2d 1016 (1986). Statements made by the Decedent under obvious emotional distress or in intensive care are admissible as *res gestae* declarations. Even dismissing the disputed testimony of the five officers who testified en masse, there is sufficient evidence to sustain the referee's findings. Inclusion of their testimony, as well as the referee's notation in Finding of Fact No. 4 that eight officers testified instead of ten, is mere surplusage and at best harmless error. *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa. Commonwealth Ct. 158, 504 A.2d 985 (1986).

Employer next argues that the referee merely parroted the proposed findings of fact and conclusions of law submitted by Claimant instead of making his own independent findings. In *Cugini v. Workmen's Compensation Appeal Board (Arlen Realty)*, 74 Pa. Commonwealth Ct. 470, 460 A.2d 395 (1983), we noted that adoption of proposed findings of fact does not make the referee's decision flawed as long as there is substantial evidence of record to support those findings. Since we have already found such evidence, we hold that the referee has properly exercised his fact finding function.

Finally, Employer argues that Claimant's medical expert improperly based his opinion on a hearsay discussion with Claimant that occurred six months after Decedent's death. In *Viotek TV Sales & Service, Inc. v. Workmen's Compensation Appeal Board (Brunges)*, 71 Pa. Commonwealth Ct. 475, 455 A.2d 265 (1983), we held that in a death case, a medical expert may base his opinion on a history given to him by the claimant as long as the testimony was supported by strong circumstantial evidence and by actual testimony of other witnesses. *See Webster by Webster for Lisa v. Workmen's Compensation Appeal Board (234, Inc.)*, 92 Pa. Commonwealth Ct. 412, 499 A.2d 1117 (1985), *petition for allowance of appeal denied*, 514 Pa. 633, 522 A.2d 561.

The Claimant did testify in the present case and her testimony was virtually identical to the history she gave the medical expert. Claimant's. counsel could have just as easily elicited the opinion of his medical expert by asking a hypothetical question based on Claimant's testimony of record. The history given Claimant's medical expert is further supported by the testimony of the other witnesses in the case. Consequently, we find no error and affirm the order of the Board.

### ORDER

Now, August 10, 1988, the order of the Workmen's Compensation Appeal Board at No. A-92392, dated October 30, 1987, is hereby affirmed.