# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelly A. Finck,                              :
                      Petitioner             :
                                             :
           v.                                :      No.  1029 C.D. 2022
                                             :      Submitted:  April 28, 2023
Union County Commissioners                   :
(Workers' Compensation Appeal                :
Board),                                      :
                      Respondent             :


**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                **HONORABLE LORI A. DUMAS,** Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED: December 18, 2023**


Kelly A. Finck (Claimant), pro se, petitions for review of the July 22, 2022 Order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of the Workers' Compensation Judge (WCJ), denying and dismissing her two claim petitions.  On appeal, Claimant argues ineffective assistance of counsel[1] and that the WCJ abused his discretion with regard to an evidentiary ruling by considering irrelevant evidence.[2]  After careful review, we affirm.

---

[1] We note that the record shows that three attorneys of the same firm participated in the representation of Claimant.  Claimant does not distinguish between them in her brief.  Accordingly, neither will we.  Rather, we will, to the extent relevant, examine their representation of Claimant in the aggregate, referring to them throughout the opinion simply as "Claimant's counsel."

[2] We have combined and reordered Claimant's arguments for ease of discussion.

## I. BACKGROUND

### A. *Procedural & Factual Background*[3]

On October 30, 2016, Claimant allegedly slipped and fell on a wet floor while working as a cook, injuring her hip. (WCJ Decision, Findings of Fact (FOF) ¶¶ 1, 10-11.) Initially, Claimant's employer, Union County Commissioners (County or Employer), issued a Notice of Temporary Compensation Payable on November 21, 2016, describing the injury as a right hip sprain. (*Id.* ¶ 4.) It subsequently issued a Notice Stopping Temporary Compensation Payable and a Notice of Workers' Compensation Denial on January 26, 2017, based on alleged noncompliance with medical treatment. (*Id.* ¶¶ 5-6.) As a result, Claimant filed her first claim petition on February 10, 2017. (Certified Record (C.R.) Item 2.)

Thereafter, Employer offered Claimant a light-duty, part-time position as a receptionist, and Claimant worked in that capacity from August 24 until October 10, 2017. (FOF ¶¶ 41, 43, 47.) Prior to returning to light-duty work, Claimant's husband was convicted of an election-related offense and sentenced to a period of incarceration. (*Id.* ¶¶ 31, 32, 43.) The light-duty position Claimant was assigned was located just outside the election board's office, and, as a result, Claimant had frequent contact with individuals she blamed for her husband's arrest. (*Id.* ¶¶ 43, 47, 131; *see also* Exhibit (Ex.) D-11 (Floor Plan of Union County Government Center), C.R. Item 60.)[4] On April 11, 2018, Claimant filed a second claim petition, pro se, alleging "anxiety disorder and panic attacks caused by actions of other [] County employees." (FOF ¶ 2; C.R. Item 58.) The WCJ consolidated the two

---

[3] While Claimant originally challenged some findings of fact before the Board, Claimant no longer pursues those before this Court. Thus, we treat those findings as undisputed.

[4] Because the two claim petitions were consolidated, the Certified Record contains duplicates of certain items, such as transcripts and exhibits, which were separately docketed for each claim petition. For convenience, we cite only to the first instance of a given item.

2

petitions, and multiple hearings were held at which Claimant appeared pro se for some and was represented by her counsel for others.

Claimant testified[5] she was displeased with the light-duty placement and asked Human Resources (HR) to place her anywhere else because of its proximity to the election board's office. (FOF ¶¶ 43, 44, 131, 136.) During the almost two months she worked in that capacity, she testified that she experienced stress due to comments other employees would make, including comments from an election board employee who had testified against her husband at his criminal trial. (*Id.* ¶ 47.) Claimant also indicated that her husband's probation officer (PO), also a County employee, searched her house twice, released her medical information, threatened her husband, and accused her of lying. (*Id.* ¶¶ 48-50.)

Claimant testified that these interactions, coupled with her husband's release from incarceration with bruises and abrasions, caused anxiety and panic attacks. (*Id.* ¶¶ 50, 100.) The first severe panic attack, according to Claimant, came after a telephone call with the PO in which he allegedly threatened her. (*Id.* ¶¶ 51, 126.) According to Claimant, it became clear to her that the PO also had access to her personnel records and medical information. (*Id.* ¶ 54.)

In addition, Claimant's husband testified about his interactions with Tioga County prison officers, his interactions with the PO, and his wife's condition.[6] Claimant's counsel also deposed Mahmood Nasir, M.D., a pain management

---

[5] Claimant testified at the April 18, 2017, September 5, 2018, October 31, 2018, December 18, 2018, January 24, 2019, March 14, 2019, and September 8, 2020 hearings, transcripts of which can found in the Certified Record at Items 11, 15, 16, 17, 18, 19, and 29, and her testimony is summarized in Findings of Fact 8-22, 39-85, 88-108, 109-15, 116-27, 128-41, and 142-55.

[6] Claimant's husband testified at the September 8, 2020 hearing and his testimony is summarized in Findings of Fact 157-73.

specialist and neurologist with whom she treated for the hip injury,[7] and Jeffrey A. Gold, Ph.D., a licensed psychologist with whom she treated for the anxiety and panic attacks.[8] Dr. Nasir testified that, in his opinion, the hip injury was work related. (*Id.* ¶ 237.) Dr. Gold testified that, in his opinion, Claimant's psychological condition "w[as] related to Claimant's pain because it was a stressor" but was mostly caused by "anxiety related to [E]mployer and the interactions they [sic] had with her." (*Id.* ¶ 254.) Dr. Gold also testified that Claimant came to him on a referral from her counsel. (*Id.* ¶ 242.) When asked who sent her to Dr. Gold, Claimant stated that she could not recall. (*Id.* ¶ 72.)

Employer called County employees who interacted with Claimant, specifically the PO,[9] an election board official,[10] a coworker of Claimant,[11] and Employer's HR director,[12] who, overall, testified that they did not engage in the harassing behavior alleged by Claimant. (*See, e.g.*, *id.* ¶¶ 179; 181; 186; 203-04; 212; 223-25; 230.) Employer also deposed three Tioga County Prison officers and the deputy warden who interacted with Claimant's husband while he was

---

[7] Dr. Nasir's deposition transcript can be found in the Certified Record at Item 40 and his testimony is summarized in Findings of Fact 233-41.

[8] Dr. Gold's deposition transcript can be found in the Certified Record at Item 41 and his testimony is summarized in Findings of Fact 242-55.

[9] The PO testified at the December 13, 2019 and January 14, 2020 hearings, transcripts of which can be found in the Certified Record at Items 24 and 25, and his testimony is summarized in Findings of Fact 174-88 and 189-99.

[10] The election official testified at the May 29, 2020 hearing, a transcript of which can be found in the Certified Record at Item 27, and her testimony is summarized in Findings of Fact 200-08.

[11] The coworker testified at the May 29, 2020 hearing, and her testimony is summarized in Findings of Fact 209-17.

[12] HR director testified at the May 29, 2020 and July 16, 2020 hearings, transcripts of which can be found in the Certified Record at Items 27 and 28, and her testimony is summarized in Findings of Fact 218-221 and 222-31.

4

incarcerated there.[13] And finally, Employer deposed three expert witnesses, Thomas DiBenedetto, M.D., a board-certified orthopedic physician,[14] Wolfram Rieger, M.D., a board-certified psychiatrist,[15] and Patrick B. Respet, M.D., a board-certified orthopedic surgeon,[16] all of whom examined Claimant. Drs. DiBenedetto and Respet testified that Claimant did not sustain a disabling work-related hip injury, (*id.* ¶ 292), and Dr. Rieger testified that Claimant's anxiety and panic attacks were not related to her alleged hip injury and were situational, such that the "triggers were interactions with [County] employees regardless of [where] those interactions would occur," (*id.* ¶ 289).

### B. WCJ and Board Decisions

On October 25, 2021, the WCJ issued his decision denying and dismissing both claim petitions. The WCJ determined that Claimant had not carried her burden of proving that she had suffered compensable injuries under the Workers' Compensation Act (Act)[17] "because her evidence has been found to be not credible." (WCJ Decision, Conclusions of Law ¶ 2.) Specifically, the WCJ made the following credibility determinations. Although the WCJ credited Claimant's testimony about falling at work and that she perceived her hip pain prevented her from returning to work as a cook, the WCJ rejected Dr. Nasir's testimony and credited the testimony of Drs. DiBenedetto and Respet that Claimant's fall at work did not cause a right hip

---

[13] These deposition transcripts can be found in the Certified Record at Items 66-69 and are summarized in Finding of Fact 232.

[14] Dr. DiBenedetto's deposition transcript can be found in the Certified Record at Item 61 and his testimony is summarized in Findings of Fact 256-67.

[15] Dr. Rieger's deposition transcript can be found in the Certified Record at Item 62 and his testimony is summarized in Findings of Fact 277-89.

[16] Dr. Respet's deposition transcript can be found in the Certified Record at Item 64, and his testimony is summarized in Findings of Fact 268-76.

[17] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

5

labral tear but rather was limited to a hip contusion that did not prevent her from working. (FOF ¶¶ 290-93.) And while the WCJ found Claimant credible insofar as she experienced panic attacks during her light-duty receptionist position, he rejected Claimant's allegations that those attacks stemmed from her interactions with County employees, specifically finding that the election official, coworker, and HR director were "more credible than Claimant[]." (*Id.* ¶¶ 294-95.) The WCJ also did not credit Claimant's testimony concerning her interactions with her husband's PO. (*Id.* ¶ 296.) The WCJ found husband's testimony regarding mistreatment in jail and his interactions with the PO not credible, explicitly finding the Tioga County Prison officers' testimony and the PO's testimony more credible. (*Id.* ¶ 300.) In addition, the WCJ found that "Claimant's credibility was significantly diminished" because she did not reveal that she had found a particular physician, Dr. Gold, at the recommendation of her attorney despite intake forms and the physician's testimony. (*Id.* ¶ 297.)[18] The WCJ credited the PO's testimony that he never released any of Claimant's information. (*Id.* ¶ 298.) The WCJ did not credit Dr. Gold's opinions because they were "based solely on Claimant's subjective perceptions of her employment, and while real to her, they have been found not credible as fact by th[e] WCJ." (*Id.* ¶ 299.)

Claimant appealed to the Board, which affirmed.[19] Relevant here, the Board declined to remand for a rehearing based on Claimant's ineffective assistance allegations, reasoning as follows:

---

[18] The WCJ also found Claimant's credibility diminished because "she testified that [Employer] made her return to work when her husband was sentenced and incarcerated [but Employer's HR director] testified that [Employer] accommodated Claimant's request to delay her start date." (FOF ¶ 297.)

[19] Commissioner Gabig concurred in the result only.

Claimant points us to alleged corroborating evidence that she argues could have bolstered her and her husband's credibility, such as video from [her husband's] incarceration at [Tioga County Prison]. However, it is unclear whether this evidence was in Claimant's counsel's possession or if it would have been permitted into the record. Claimant also calls to our attention her counsel's failure to call certain witnesses, such as the [c]ounty [w]arden and his wife. Nevertheless, there is no way to discern whether these witnesses, if they were to even appear, would have assisted Claimant's case or how this testimony would have bolstered her and her husband's credibility. We, as the Board, do not propose to know the details of her counsel's trial strategy. Nonetheless, it is apparent from the 10 lay witness testimonies obtained, numerous hearings devoted to Claimant's testimony, multiple medical experts deposed, and multitudinous exhibits entered on the record over a three[-]and[-]a[-]half year period of litigating, that Claimant's counsel did his due diligence, made every attempt to chase down evidence, and spared no expense in advocating for Claimant, despite an unsuccessful outcome. We do not believe the circumstances of this case justify a remand or rehearing for collection of additional evidence.

(Board Op. 19-20.) Claimant thereafter filed the instant Petition for Review.

## II. DISCUSSION

### A. *Standard of Review*

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, limits our review in workers' compensation matters to determining whether the Board violated constitutional rights, failed to act in accordance with law, or made findings unsupported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). A conclusion is "not in accordance with law . . . if the agency decision represents 'a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Slawek v. State Bd. of Med. Educ. & Licensure*, 586 A.2d 362, 365 n.4 (Pa. 1991). Thus where, as here, a claimant asks us to reverse the Board for abuse

7

of discretion under the Act, we review for flagrant abuse of discretion or arbitrary execution of the Board's duties.

### B. Ineffective Assistance of Counsel

#### 1. Parties' Arguments[20]

Claimant's first argument is that her counsel was ineffective by failing to present the "positive side" of her case. (Claimant's Brief (Br.) at 12.) Specifically, she points to counsel's failure to question her further after she forgot to mention that she learned of Dr. Gold through her attorney. (*Id.*) Further, in her view, her counsel should have called a number of character witnesses. (*Id.* at 13.)

She also complains that her counsel was ineffective by failing to impeach Employer's witnesses. The thrust of her argument is that, had her counsel pointed more specifically to certain alleged inconsistencies, it would have become clear that, for example, the PO "flip-flopped some stories . . . and blatantly lied . . . ." (*Id.* at 15.) She also asserts that her counsel erred in not introducing pictures of her husband after release from prison because had he, Claimant's "credibility and that of her husband would not have been called into question." (*Id.*) She further suggests that, had her counsel "properly questioned . . . , called additional witnesses, and subpoenaed additional records, it could have been proven that the PO and [Tioga County Prison officers] had committed perjury during their testimony in order to

---

[20] Claimant's brief does not cite caselaw or relevant legal authority, nor does Claimant meaningfully discuss precedent. *See* Pa.R.A.P. 2119(a) (the argument shall include "such discussion and citation of authorities as are deemed pertinent"). Despite the shortcomings in Claimant's brief, Employer attempted to address Claimant's arguments, and we will also address the merits of Claimant's issues on appeal to the extent we are able. *See Richardson v. Pa. Ins. Dep't*, 54 A.3d 420, 426 (Pa. Cmwlth. 2012) (providing that we may review the cognizable arguments we can glean from an appellate brief, despite a pro se appellant's noncompliance with the Pennsylvania Rules of Appellate Procedure, even if those violations are "egregious," if they do not preclude meaningful appellate review).

cover up their own wrongdoings." (*Id.* at 15-16.) She also asserts that opposing counsel acted unethically in gossiping with a witness and that her counsel glossed over it. (*Id.* at 6.)[21]

Employer relies on this Court's decision in *Martell v. Workers' Compensation Appeal Board (Doyle Equipment)*, 707 A.2d 242 (Pa. Cmwlth. 1998), for the proposition that "there is no mandate to remand for a rehearing every time a losing party can point to some evidence that his or her attorney did not introduce into the evidentiary record." (Employer's Br. at 11.) Employer argues remand is only proper where "the WCJ's findings are not supported by substantial evidence or where the WCJ fails to make findings on a crucial issue," and because Claimant does not so allege, her claims must fail. (*Id.* at 11-12.)

### 2. Analysis

Early in this Court's existence, looking to the Fourteenth Amendment of the United States Constitution, U.S. CONST. amend XIV, and article I, section 9 of the Pennsylvania Constitution, PA. CONST. art. I, § 9, we observed at the time that the right "to effective assistance of counsel has never been extended to civil or administrative proceedings, but rather is limited to a review of criminal prosecutions." *Johnson v. Workmen's Comp. Appeal Bd.*, 321 A.2d 728, 730 (Pa. Cmwlth. 1974). Given legal developments since then, however, we must qualify that statement, and now litigants have a right to effective assistance of counsel in certain other proceedings. For example, since *Johnson*, our state courts have recognized the right to effective assistance of counsel, protected by the Fourteenth Amendment, in various types of proceedings. *See, e.g.*, *In re Commitment of*

---

[21] Though Claimant asks this Court to reverse the Board, we will deem the requested relief to be reversal of a denial of rehearing, the relief compatible with her ineffective assistance claims. (*See* Employer's Brief at 10 (proceeding with that understanding).)

9

*Hutchinson*, 454 A.2d 1008, 1011 (Pa. 1982) (civil commitment); *In the Interest of J.T.*, 983 A.2d 771, 774-75 (Pa. Super. 2009) (termination of parental rights); *In the Matter of J.P.*, 573 A.2d 1057, 1061-62 (Pa. Super. 1990) (child dependency). In the administrative agency context, we have recognized a right to effective assistance of counsel in a parole revocation proceeding before the Pennsylvania Parole Board. *Hughes v. Pa. Bd. of Prob. & Parole*, 534 A.2d 589, 591 (Pa. Cmwlth. 1987) ("It is beyond dispute that a parolee in a revocation proceeding has a right to effective assistance of counsel.").

While the effective assistance of counsel is not "constitutionally mandated" in the workers' compensation context, proven incompetency may constitute "cause shown" for a rehearing under Section 426 of the Act, 77 P.S. § 871.[22] *Johnson*, 321 A.2d at 731. The rehearing provision in Section 426 states, in relevant part, that "[t]he [B]oard, upon petition of any party and **upon cause shown**, **may grant** a rehearing of any petition upon which the [B]oard has made [a decision]." 77 P.S. § 871 (emphasis added).

The Court examined this provision in *Johnson*, where the claimant's attorney and opposing counsel "stipulated to the admission into evidence of medical reports . . . in lieu of their testimony in person." 321 A.2d at 729. The referee[23] denied the claimant's petition, concluding he did not meet his burden of proof and the Board affirmed. *Id.* The claimant subsequently retained new counsel and petitioned the Board for a rehearing on the basis he was denied the effective assistance of counsel, which the Board denied. *Id.* at 730. The claimant urged this Court to reverse the Board's denial of a rehearing because of his first attorney's alleged incompetence, and we declined to do so, reasoning that the attorney's actions did not amount to

---

[22] Section 426 was added by Section 6 of the Act of June 26, 1919, P.L. 642.
[23] WCJs were formerly known as referees.

incompetence. *Id.* *Johnson* laid the groundwork for our current jurisprudence in this context. In addition to establishing that proven incompetency may amount to "cause shown" to warrant a rehearing under Section 426, *Johnson* established that an attorney's mere misjudgment about a strategic choice, which it described as "a conscious and deliberate decision," will not be sufficient to warrant a reversal of the Board's discretionary decision to deny a rehearing. *Id.* Rather, *Johnson* suggests that a claimant would have to point, as a threshold matter, to objective incompetence.

In the almost 50 years since we decided *Johnson*, this Court has had occasion to apply its basic attorney incompetence principles in two key workers' compensation opinions. The first, *Bickel v. Workmen's Compensation Appeal Board (Williamsport Sanitary Authority)*, 538 A.2d 661 (Pa. Cmwlth. 1988), involved a claimant whose attorney inexplicably failed to present **any** medical testimony in support of the claimant's claim petition despite representing he would do so. *Id.* at 662. As a result, the referee concluded the claimant did not meet his burden of proof. *Id.* The claimant first filed a pro se appeal requesting remand, which the Board denied, and then, a counseled petition for rehearing on the basis of his original attorney's incompetence, which the Board also denied. *Id.* We affirmed the Board's remand denial but reversed the Board's rehearing denial, reasoning everyone expected counsel to present the evidence yet "counsel never did present this testimony, and **no reason for his failure appears in the record before us**. . . . [I]t appears that this situation came as a surprise to [the claimant] and that he discharged his counsel for that reason." *Id.* at 663 (emphasis added).[24] Indeed, there, we

---

[24] Our parallel analyses in the unemployment compensation and licensing contexts are similar. *See Wilkins v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 283, 286 (Pa. Cmwlth. 1985) (finding that an attorney's decision not to call witnesses due to questionable relevance did not amount to ineffective assistance sufficient to warrant reconsideration); *Rosenthal v. State Bd. of* **(Footnote continued on next page…)**

11

remarked that the evidence counsel was to present would have been the claimant's "**only means**" of proving his case. *Id.* (emphasis added). Thus, *Bickel* stands for the proposition that "cause shown" under Section 426 may exist where the incompetence of counsel undermines a claimant's ability to satisfy its burden of proof.

The second reported decision on this topic is *Martell*, the case relied upon by Employer.[25] There, we explained that "the Board has broad discretion to order rehearing where the interests of justice so require, [but] they do not mandate rehearing **every time a losing party can point to some evidence which his attorney did not introduce**." 707 A.2d at 244 (emphasis added). We also framed *Bickel*[26] as involving attorney incompetence resulting in "**manifest injustice**," noting that only **extraordinary circumstances** lead to a finding of abuse of discretion on the part of the Board in denying a rehearing. *Id.* In *Martell*, Judge Leadbetter cogently observed that absent that standard, "piecemeal hearings prompted by the wisdom of hindsight would become the rule rather than the exception." *Id.* Thus, generalizing the principle from *Martell*, we conclude that, in

---

*Pharm.*, 457 A.2d 243, 245 (Pa. Cmwlth. 1983) (denying ineffective assistance claim in pharmacy board context where pharmacist alleged counsel erred in not arguing an entrapment defense and in saying pharmacist was lax in running his business).

[25] Pre-*Martell*, we applied *Johnson* and *Bickel* in *Mitchell v. Workmen's Compensation Appeal Board (Neal Tree Service)*, 565 A.2d 224, 226 (Pa. Cmwlth. 1989) (finding that claimant's scenario distinguishable from *Bickel* where an attorney had not entered an appearance and the claimant failed to appear for a hearing). We also reiterated in *Dominijinni v. Workmen's Compensation Appeal Board (DeCarlo)*, 581 A.2d 245, 248 (Pa. Cmwlth. 1990), that rehearing denial is not an abuse of discretion where the record does not support any suggestion of incompetence on the part of the attorney.

[26] The *Martell* Court also analyzed two additional cases reversing rehearing denials: *Cudo v. Hallstead Foundry, Inc.*, 539 A.2d 792 (Pa. 1988), and *Moats v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 588 A.2d 116 (Pa. Cmwlth. 1991). Both of those cases involved after-discovered evidence—not allegations of attorney incompetence.

12

the context of alleged attorney incompetence, we will not reverse the denial of a rehearing absent a showing of manifest injustice.

Various unreported decisions of this Court have shed further light on what kind of alleged incompetence will pass muster under our exacting standard.[27] *See, e.g.*, *Saied v. Workers' Comp. Appeal Bd. (Mezies Aviation Grp. (USA), Inc.)* (Pa. Cmwlth., No. 426 C.D. 2020, filed May 26, 2021), slip op. at 25, *appeal denied*, (Pa., No. 59 EAL 2022, filed Aug. 23, 2022) ("While [the c]laimant is dissatisfied that [c]ounsel did not ask him certain questions, required him to testify through a translator, did not call his wife as a witness, did not submit certain documents, and did not challenge certain aspects of [a physician's] testimony on cross-examination, we agree with [the e]mployer that this does not require a rehearing . . . ."); *Price v. Workers' Comp. Appeal Bd. (Babb Absence Mgmt. Servs.)* (Pa. Cmwlth., No. 364 C.D. 2014, filed Nov. 10, 2014), slip op. at 9 (affirming denial of rehearing where record evidence, though discredited by WCJ, was sufficient to satisfy the claimant's burden of proof; thus attorney's conduct in not submitting additional evidence did not amount to manifest injustice). *But see Master v. Workers' Comp. Appeal Bd. (Laminators, Inc.)* (Pa. Cmwlth., No. 1879 C.D. 2012, filed Apr. 30, 2014), slip op. at 8 (finding ineffective counsel where counsel alleged opposing counsel had misled him into not offering medical evidence, noting "if counsel was misled and did not offer medical evidence, he was ineffective; and if he was not misled, he was ineffective because he did not timely file any medical reports").

In summary, *Johnson*, *Bickel*, and *Martell* teach, first, that allegations of attorney incompetence are a rehearing issue under Section 426 of the Act, which requires "cause shown." 77 P.S. § 871. Our cases further reveal that for attorney

---

[27] We may cite unreported panel decisions of this Court for their persuasive value pursuant to Section 414(a) of our Internal Operating Procedures. 210 Pa. Code § 69.414(a).

13

incompetence to amount to "cause shown" in this context, the claimant must satisfy two elements: (i) objective incompetence on the part of counsel, *Johnson*, and (ii) manifest injustice to the claimant flowing from that objective incompetence, *Bickel*, *Martell*.

Claimant's complaints that her counsel failed to put forth the "positive side" of her case, did not "point out the discrepancies" in the testimony of Employer's witnesses, failed to reveal that the PO had committed perjury, and glossed over "opposing counsel . . . unethically . . . gossiping with a witness prior to her testimony" simply do not rise to the level of objective ineffective assistance our cases require. (Claimant's Br. at 6.) Indeed, the *Martell* Court explained, looking to the record, that the alleged incompetence of counsel "under the circumstances of this case . . . are as readily explained as strategic decisions as negligence." 707 A.2d at 244. The same is true here. Several instances of Claimant's complained-of conduct can all be explained more readily as strategy than as incompetence. This case involved more than 40 exhibits, nearly 2 dozen hearings, 5 medical witnesses, and 10 lay witnesses. (WCJ Decision at 2-4.) Accordingly, in an already unwieldy case where there was already significant risk of confusing the issues, Claimant's counsel reasonably could have concluded that further evidence in an already evidence-rich case could divert the WCJ's attention from the most important issues. Counsel could have reasonably concluded that further cross-examination, too, would detract from the overall message of Claimant's case, unduly burden the witnesses, and prejudice Claimant's case. And finally, counsel could have reasonably concluded that the "gossiping" of which Claimant complained was not sufficiently egregious or prejudicial to Claimant's case to distract from the issues to which counsel wanted to direct the WCJ's attention.

14

We also observe that the record belies any suggestion of incompetence. A thorough review of the record reveals that Claimant's counsel cross-examined each of Employer's witnesses, probing into their stories and attempting to uncover inconsistencies and corroborate Claimant's version of events. (*See, e.g.*, 1/14/20 Hearing Transcript (Tr.) at 15, 41-42, 44; 5/29/20 Tr. at 70, 74, and 78; 7/16/20 Tr. at 46, 48, 61, 64, 69-70, 72, 77.)

Specifically, counsel asked questions which appeared calculated to show bias or coordination among them, and to prove Claimant's theory of the case. For example, counsel asked Claimant's coworker whether anyone had prepared her or whether she had spoken with Employer's HR director prior to testifying. (5/29/20 Tr. at 30-31.) Counsel attempted to impeach the witness by suggesting she had known Claimant longer than she originally claimed. (*Id.* at 38.) And counsel tried to elicit testimony from her that would tend to corroborate Claimant's allegations of work-related emotional distress. (*Id.* at 46.) Counsel also confronted the County election official about the alleged "gossiping." (*Id.* at 32.)

Counsel also defended the depositions of Employer's medical experts. The record reveals active questioning and participation in each on the part of Claimant's counsel in the defense of those depositions. (*See, e.g.*, Dep. of Dr. DiBenedetto, at 15-16 (probing percentage of defense-side Independent Medical Exam (IME) work performed in connection with his qualifications), and at 57-63 (cross-examining Dr. DiBenedetto); *See also* Dep. of Dr. Rieger at 12-16; 47-57 (same).)

Moreover, the extensive and detailed proposed findings of fact and conclusions of law prepared by counsel, though ultimately unsuccessful in persuading the WCJ, reflected diligence on the part of counsel, and at a minimum reflected an attempt to cast light on the "positive side" of Claimant's case. (*See*

*generally* Claimant's Br. in Support of Pending Claim Petitions and Proposed Findings of Fact, Conclusions of Law, Summary, and Order, C.R. Item 150.) Put simply, far from revealing objective incompetence, the record shows diligent lawyering.

As the Board explained:

> [I]t is apparent from the 10 lay witness testimonies obtained, numerous hearings devoted to Claimant's testimony, multiple medical experts deposed, and multitudinous exhibits entered on the record over a three[-]and[-]a[-]half year period of litigating, that Claimant's counsel did his due diligence, made every attempt to chase down evidence, and spared no expense in advocating for Claimant, despite an unsuccessful outcome.

(Board Op. at 19-20.)

Although counsel may not have presented every piece of evidence available or cross-examined witnesses to Claimant's satisfaction, as discussed above, rehearing is not required "every time a losing party can point to some evidence which [her] attorney did not introduce." *Martell*, 707 A.2d at 244. Accordingly, no manifest injustice resulted from the Board's denial of rehearing. Simply put, our cases require objective incompetence of counsel and a resulting manifest injustice for us to find the Board abused its discretion in denying a rehearing on the basis of alleged attorney incompetence. Because the record reveals no objective incompetence, and no indication of manifest injustice, we find that the Board's denial of a rehearing does not amount to an abuse of discretion.

C.    *Unenforceable Subpoenas*

1.    Parties' Arguments

Claimant next asks, "Why was testimony allowed from individuals with no personal knowledge of [Claimant], while a subpoena for their paperwork had been

16

deemed unenforceable?  The [WCJ] allowed the testimony."  (Claimant's Br. at 6.)
Claimant does not provide legal support for this claim but seems to argue that the
WCJ erred in considering the Tioga County Prison officers' testimony when a
subpoena related to their testimony had been deemed unenforceable because the
documents "had nothing to do with [C]laimant."  (*Id.* at 16.)  Employer does not
seem to directly respond to this argument; however, it suggests that the effect of the
information in any of the subpoenaed documents on the WCJ's credibility
determinations is "purely speculative."  (Employer's Br. at 17.)

2. Analysis

WCJs enjoy broad discretion regarding evidentiary decisions.  *Bristol
Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 616 (Pa. Cmwlth.
2019).  "Commonwealth agencies are not bound by the technical rules of evidence
. . . and all relevant evidence of reasonably probative value may be received."  *Id.*
(citing Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505).  Section
505 of the Administrative Agency Law "has been properly interpreted to permit a
relaxation of the strict rules of evidence in . . . hearings and proceedings, including
those held by a WCJ."  *Id.*  Where sufficient evidence supports a WCJ's findings,
despite the WCJ having considered additional and possibly irrelevant testimony, we
have found such testimony to be "mere surplusage and at best harmless error."
*Haverford Township v. Workmen's Comp. Appeal Bd. (Angstadt)*, 545 A.2d 971,
974 (Pa. Cmwlth. 1988).  In addition, we have said that an abuse of discretion will
amount to harmless error where it does not affect an "ultimate decision" in the case.
*Herman v. Workmen's Comp. Appeal Bd. (Fayette Cnty.)*, 439 A.2d 834, 836 (Pa.
Cmwlth. 1981).

17

The voluminous record and many side issues in this case can easily distract from the ultimate issue, which is whether either or both of Claimant's injuries were work related and thereby compensable under the Act. A brief review of the law makes clear that—even if the WCJ abused his discretion in considering the Tioga County Prison officers' depositions, inclusion of that testimony amounted to harmless error because it was not outcome determinative. For a physical injury to be compensable, it must have occurred during the course and scope of employment and must be causally connected to the employment. *Jeannette Dist. Mem'l Hosp. v. Workmen's Comp. Appeal Bd. (Mesich)*, 668 A.2d 249, 252 (Pa. Cmwlth. 1995). For a mental injury to be compensable under the Act, it must either be causally related to a work-related physical injury (i.e., physical-mental), or causally related to abnormal working conditions or a work-related psychic stimulus (i.e., mental-mental). *Ryan v. Workmen's Comp. Appeal Bd. (Cmty. Health Servs.)*, 707 A.2d 1130, 1333-34 (Pa. 1998). The physical and physical-mental categories are clearly not implicated here where the WCJ found that the physical injury (i.e., hip injury) for which Claimant seeks compensation under the Act is not work related. (*See* FOF ¶ 292; Board Op. at 16.) Thus, in order for her anxiety disorder and panic attacks to be compensable, Claimant would have to prevail under the mental-mental standard. However, the WCJ found that no **County** employee engaged in harassing behavior. (*See* FOF ¶¶ 295, 296; Board Op. at 17) (explaining that Claimant "failed to present credible testimony to meet all the elements for either [the physical-mental or mental-mental] burden").) So, although the WCJ found that Claimant suffered from panic attacks and anxiety, there was not credible evidence to support a finding that a work-related psychic stimulus or abnormal working conditions **in the course and scope of her employment** caused that injury. The treatment of Claimant's husband while

incarcerated in a different county and/or the veracity of the officers there does not appear to have any bearing on whether abnormal working conditions existed at her workplace, which would be necessary under the Act.

We do find it unclear why the WCJ would have permitted their testimony in the first instance given its attenuated and tangential nature. However, even if it was an abuse of discretion to consider the testimony, we conclude that it amounted to mere surplusage, and thus harmless error, because it did not bear on the essential issue in the case, namely, whether Claimant had suffered injuries compensable under the Act.

Finally, to the extent we could understand Claimant's argument on this point to be that her counsel was ineffective for failing to press the subpoena issue further, we would reiterate our reasoning above that such a decision can more readily be explained as strategy than incompetence.

## III.    CONCLUSION

Based on the foregoing, we affirm the Order of the Board.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelly A. Finck,                 :
             Petitioner       :
                              :
         v.                :    No.  1029 C.D. 2022
                              :
Union County Commissioners     :
(Workers' Compensation Appeal   :
Board),                       :
            Respondent    :

# O R D E R

      **NOW**, December 18, 2023, the Order of the Workers' Compensation Appeal Board, dated July 22, 2022, is **AFFIRMED**.

 

_____
         **RENÉE COHN JUBELIRER,** President Judge